PEPPER v. CLEGG.

(Filed April 14, 1903.)

JUDGMENTS—*Setting Aside Judgments—Excusable Neglect—The Code, Sec. 274.*

The facts set forth in the opinion in this case do not constitute sufficient ground upon which to set aside a judgment for excusable neglect.

ACTION by C. G. Pepper against W. G. Clegg, heard by Judge *Thomas A. McNeill,* at August Term, 1902, of the Superior Court of ORANGE County. From a judgment setting aside a judgment for the plaintiff, he appealed.

*John W. Graham,* for the plaintiff.
*Charles M. Stedman* and *John N. Staples,* for the defendant.

CLARK, C. J.    This is a motion to set aside a judgment for excusable neglect. The findings of fact by the judge are conclusive if there is any evidence, except only when there is an omission to find material facts. If upon the facts found the judge correctly adjudges there is excusable neglect, whether he shall set aside the judgment or not lies in his irreviewable discretion, except where there is gross abuse of discretion, but by the terms of the statute (The Code, Sec. 274) the discretion to set aside the judgment is not given, unless there has been excusable neglect. See *Norton v. McLaurin,* 125 N. C., 185; *Marsh v. Griffin,* 123 N. C., at p. 669, and *Morris v. Ins. Co.,* 131 N. C., 212, where the authorities are collected.

So, the only question presented by this appeal is whether the facts found establish excusable neglect. We think they do not. In brief the facts are: The case regularly stood for trial in Orange Superior Court at the term beginning 4 August, 1902. The defendant retained counsel living in Greensboro who did not regularly attend that court, and who on 29 July addressed a letter to counsel for plaintiff, stating that he wished to take a vacation and asking a continuance. Counsel for plaintiff received this letter that night and after seeing his client replied by mail on the next day, 30 July, that his client was unwilling to a continuance, but that the case could not be called till Wednesday, 6 August, and would be the first civil case called, and to notify his witnesses not

to attend till that day. This letter was not received at
Greensboro, till 8 p. m. 30 July, being after the general de-
livery had closed. Defendant's counsel left on the train that
night on a visit to Washington, D. C., and Atlantic City, N.
J. Plaintiff himself left for Virginia about the same time
"in the latter part of July." On 5 August the plaintiff's
counsel wrote a letter to defendant's counsel in Greensboro,
notifying him that the case would be called on 6 August and
that the defendant and his counsel and witnesses must come
on the morning train on the 6th. This courtesy did not
avail the defendant's counsel, however, because he remained
at Atlantic City till the morning of the 6 August and did not
get to Greensboro till 7:40 a. m. Thursday 7 August. He
then went immediately to Hillsboro, but the case had been
regularly reached and tried in the afternoon of the day be-
fore. The plaintiff's counsel declined to agree to set aside
the verdict and judgment and the judge refused to set them
aside, as a matter of discretion, as he could have done. Sub-
sequently this motion to set aside for excusable neglect was
made and continued to October Term, when it was allowed.
It further appears that the defendant went off to Virginia
for his health, but it is found that "the affidavits do not dis-
close that he was physically unable to attend Orange Court."
The defendant did not show that any attention was paid by
him to the case after the trial term began, except that on 6
August, the very day of the trial, and two days after the term
had begun, his counsel received a letter from him at Atlantic
City, or en route, and not getting a reply the plaintiff, some
time subsequent thereto, wired another counsel at Greensboro
to represent him.

When the defendant's counsel did not receive a reply on
30 July as soon as he expected, he could easily have tele-
graphed or possibly have telephoned to Hillsboro, and it was
not excusable neglect for him to leave on a pleasure trip, as

he states, or for his client to leave, till he had received assent to his request for a continuance. Even had he been compelled to leave on urgent business, he should at least have placed the matter in the hands of another counsel in Hillsboro or even in Greensboro. The defendant himself is in no better condition. Had he gone to court, as it was his duty to do, he could have gotten other counsel or have made an affidavit for a continuance, if the facts justified it. *Waddell v. Wood,* 64 N. C., 624. In *Bradford v. Coit,* 77 N. C., 72, it was held "Where it appeared that a party had not determined to attend court unless advised by counsel that it was absolutely necessary and after correspondence with his counsel concerning the trial of the case failed to leave home in time to reach court before the trial began, this was not excusable, but gross neglect, and the court below erred in vacating the judgment." Here, there was no correspondence even with his counsel till too late. The numerous cases in which *Bradford v. Coit* has been approved need not be cited here, as they can be found at the end of that case in the *Annotated reprint* of 77 N. C.

The plaintiff, who was a railroad station agent, doubtless had to get leave of absence to attend the trial, and probably not only lost his pay while doing so, but had to employ a substitute. The jury of twelve men and the judge had left their own homes to try this matter at the appointed time. The defendant and his counsel were absent without legal excuse. It is not strange under the circumstances that the plaintiff refused to give up his verdict. In all cases, however, counsel and their clients are sole judges of what should be done as a matter of courtesy. The courts administer only legal rights.

A law suit is a serious matter. He who is a party to a case in court "must give it that attention which a prudent man gives to his important business." *Sluder v. Rollins,* 76 N. C., 271; *Roberts v. Allman,* 106 N. C., 391. That was not done in this case. The State affords its courts at considerable ex-

pense to the public and at an inconvenience to jurors and others, that matters of difference may be judicially determined. The regular and orderly course of court procedure must be followed, and litigants who disregard this have no cause to be surprised if they find themselves in the condition of those who, not observing the schedule, arrive at the station after the train has left. "Punctuality is the politeness of Kings," was said by a great sovereign. It is a necessity in the courts and litigants and their counsel who without legal excuse fail to be present when a cause is reached for trial, can not be surprised that the opposite party and the courts shall decline to give them "another day." To procure that exceptional favor, *laches* must be clearly negatived.

The employment of counsel does not excuse the client from giving proper attention to the case. *McLean v. McLean,* 84 N. C., 366; *Vick v. Baker,* 122 N. C., 98; *Norton v. Mc-Laurin,* 125 N. C., 187. In *Manning v. Railroad,* 122 N. C., at p. 831, this court distinctly said that it would not sustain a leisurely manner of "attending to legal proceedings at long range." A client summering in Virginia, with his counsel at a seaside in New Jersey, can not ask that a court trying a cause, in regular course in North Carolina, shall set aside the verdict and judgment because it did not suit their convenience to attend. *Vigilantibus, non dormientibus leges subveniunt.* 2 Inst., 690. In *Gwaltney v. Savage,* 101 N. C., 103, the defendant employed counsel regularly attending the trial court, and was guilty of no negligence himself.

When a man has a case in court the best thing he can do is to attend to it. If he neglects to do so he can not complain because the other party attended to his side of the matter. There being "not excusable but gross neglect, the court below erred in vacating the judgment." *Bradford v. Coit,* 77 N. C., 72; *Marsh v. Griffin,* 123 N. C., at p. 670.

Judgment Reversed.