STATE OF NORTH CAROLINA v. WINSTON PHILLIP.

(Filed 31 January 1964.)

1. **Constitutional Law §§ 31, 32—**

Every person charged with crime is entitled to be represented by counsel, and this right necessarily includes a reasonable time for counsel to prepare the case.

2. **Constitutional Law § 31; Criminal Law § 86—**

Ordinarily, a motion for continuance is addressed to the sound discretion of the trial judge, but when the motion is based on a right guaranteed by the Federal and State Constitutions, the motion presents a question of law and the order of the court is reviewable.

3. **Same— Record held to show that no prejudice resulted from denial of motion for continuance.**

Where the record discloses that some forty-three days prior to trial defendant's counsel obtained a continuance, that two days prior to the trial, at the beginning of the term, defendant's counsel, present in court, failed to make any motion after announcement by the solicitor that the case would be called during the term, and that when the case was called defendant's counsel made motion for continuance on the ground that defendant wished to employ additional counsel and had been sick and unable to confer with counsel, but no affidavit is filed detailing facts asserted as a basis for the motion, G.S. 1-176, *held* defendant has failed to show prejudice from the denial of his motion for continuance, regardless of whether the motion was addressed to the discretion of the court or was made as a matter of right.

4. **Criminal Law § 94—**

The record in this case *is held* to disclose that interrogations of witnesses by the court were properly phrased to clarify and screen the testimony so as to prevent the introduction of any incompetent evidence, and did not constitute an expression of opinion by the court. G.S. 1-180.

5. **Constitutional Law § 32—**

Defendant has the right to be represented by counsel or to appear *in propria persona* but he has no right to appear both by himself and by counsel. G.S. 1-11.

6. **Criminal Law § 165½—**

Indulgence by the court in permitting defendant, who was represented by counsel, to personally cross-examine a witness, *held* not ground for a new trial, it not appearing that defendant was prejudiced thereby.

**7. Criminal Law § 106—**

An instruction to the effect that a reasonable doubt means a fair and honest doubt based on common sense and that if the jury, after applying that test was not satisfied to a moral certainty of defendant's guilt, there would be a reasonable doubt, *is held* without prejudicial error.

APPEAL by defendant from *Carr, J.,* June 1963 Criminal Session of DURHAM.

On June 27, 1963 the defendant was convicted of four charges contained in separate bills of indictment. Each charged the commission of a specific offense on April 13, 1963 as follows: No. 4778, administering to a pregnant woman and prescribing for her drugs with the intent of procuring a miscarriage in violation of G.S. 14-45; No. 4779, practicing medicine without a license; No. 4780, unlawful possession of amphetamine and phenobarbital, barbiturate or stimulant drugs; No. 4781, delivering barbiturates not in good faith, and in violation of G.S. 90-113.2 (1).

The defendant did not testify or offer evidence in his own behalf. He stipulated that he had no license to practice medicine in North Carolina and has had none. The evidence of the State was amply sufficient to take the case to the jury and to sustain its verdict. On this appeal defendant does not contend that he was entitled to a nonsuit. In brief summary, the State's evidence tended to establish the following facts:

On Saturday, April 13, 1963, the prosecuting witness, Mrs. Ruby P. Woodard, was four and a half months pregnant. At that time Mrs. Woodard was in good health and she had taken no drugs. At about 11:00 a.m. on that day she went to a house at 412 S. Mangum Street in Durham to keep an appointment with a "Dr. Winslow Phillip." A sign in the yard read "Durham Surgical Company." Upon her arrival, the defendant directed her to an "examining room" where he injected a drug into her uterine cavity by means of a machine. She was then given a couple of capsules to take immediately and some pills to take for pain later. While she was at the Durham Surgical Company she saw no one except the man who medicated her. She paid him $120.00 of his $300.00 fee, promised to pay the balance later, and started on the return trip to her home in Wilson.

A short distance east of Raleigh she became unconscious and was taken by ambulance to the Wake Memorial Hospital. There it was determined that Mrs. Woodard was suffering from intravascular amolysis, i.e., a rupture of the blood cells within the veins. In the absence of disease, this condition is commonly caused by drugs. Mrs. Woodard told the attending physician, Dr. Thomas D. Guin, of the events which had occurred in Durham. The defendant was arrested at 412 S. Mangum Street. About 11:30 p.m. detectives brought him to the hospital where Mrs. Woodard identified him as the man who had treated her in Dur-

ham. Dr. Guin informed the defendant privately that Mrs. Woodard was critically ill and urged him, if he had attempted to perform an abortion on her, to reveal the drug he had used so that they might treat her successfully. The defendant denied that he had ever seen her before. However, he later told a detective of the Raleigh Police that Mrs. Woodard had been to his home that morning seeking narcotics and that he had told her he sold neither narcotics nor medicine. At 12:50 a.m. on Sunday Mrs. Woodard had a miscarriage which, in the opinion of Dr. Guin, was induced by a drug injection.

On Sunday officers searched the defendant's premises and found vials of ergonovinemaleate, a drug used to induce miscarriage; an instrument used to examine women and a tube of Orthogynal creme; hypodermic needles; and other surgical supplies. The search also revealed large quantities of phenobarbital tablets, a barbiturate; several bottles containing dextro amhetamine; and Bellophen pills which contain both phenobarbital and belladonna. A chemical analysis revealed that the pills which had been given Mrs. Woodard to take for pain were phenobarbital.

His Honor imposed active prison sentences: In No. 4778, not less than three and a half years or more than five; in No. 4779, one year to begin at the expiration of the sentence imposed in No. 4778; Nos. 4780 and 4781, consolidated for judgment, one year to run concurrently with No. 4779. From the judgment, the defendant appealed to this Court.

*Attorney General Bruton, Assistant Attorney General Richard T. Sanders for the State.*

*Blackwell M. Brogden for defendant appellant.*

SHARP, J.   When the case was called for trial the defendant, in the absence of the jury, dictated the following motion to the court reporter:

"This cause coming on to be heard at the June 26, 1963, Term before the Honorable Leo Carr, Presiding, and the defendant, Winston Phillips, desires to employ additional counsel in said case with C. J. Gates to represent him;

"The defendant having been sick and counsel C. J. Gates was unable to confer with the defense and adequately prepare his case; that counsel has stated to the Court that he was not prepared to try his said case and that he had not interviewed a single witness for the defense; therefore, he makes this motion for a continuance of said case until the next Term of Criminal Court of said County. This 26th day of June, 1963."

The court heard the motion and found facts which are summarized as follows:

Bill of indictment No. 4778 was returned by the grand jury at the April Term 1963. It was based on a warrant issued for the defendant on April 13, 1963 at which time the defendant had given bond for his appearance in the Superior Court on April 17, 1963. This case was calendared for trial at the May Term which convened on May 13, 1963. C. J. Gates of the Durham Bar appeared at that term and moved for a continuance upon the ground that he needed more time to prepare defendant's case for trial. This motion was allowed. The case was again calendared for trial on June 26, 1963. At the call of the calendar on Monday, June 24th, the defendant's attorney, C. J. Gates, was present. The solicitor announced that this case would be for trial and called for any motions which were to be made in any case set for trial at the term. Defendant's counsel made no motion. At no time was there presented to the court a doctor's certificate indicating that the defendant had been too ill to confer with counsel or to stand trial.

Upon the foregoing findings the court denied the motion for continuance and directed the trial to proceed. After the solicitor had started interrogating prospective jurors, defendant's counsel, C. J. Gates, stated in open court that there were three other cases on the calendar pending against the defendant, to wit, Nos. 4779, 4780, and 4781; that to save time and to dispose of all the cases at once, he suggested that the additional three cases be consolidated with No. 4778 for trial. With the consent of the solicitor and the defendant, the court then ordered the four cases consolidated for trial.

Defendant now contends that the failure of the court to allow his motion for a continuance in effect denied him the right to counsel and the right to present his defense as guaranteed by Article 1, §§ 11 and 17 of the Constitution of North Carolina and the Fourteenth Amendment to the United States Constitution.

Every person charged with crime is entitled to be represented by an attorney and this right necessarily includes a reasonable time for counsel to prepare the defendant's case. *State v. Utley,* 223 N.C. 39, 25 S.E. 2d 195. Ordinarily a motion for continuance is addressed to the sound discretion of the trial judge and his ruling thereon is not subject to review on appeal except in a case of manifest abuse. *State v. Creech,* 229 N.C. 662, 51 S.E. 2d 348. However, when the motion is based on a right guaranteed by the Federal and State Constitutions the question presented is one of law and the order of the court is reviewable. *State v. Lane,* 258 N.C. 349, 128 S.E. 389; *State v. Farrell,* 223 N.C. 321, 26 S.E. 2d 322.

Regardless of whether the defendant bases his appeal upon an error of law or an abuse of discretion, it is elementary that to entitle him to a

new trial he must show not only error but prejudicial error. He has shown neither. Defendant was represented by counsel of his own choosing who, forty-three days earlier, had secured a continuance on the ground that more time was needed to prepare for trial. When the solicitor announced two days earlier that this case would be for trial and asked if there were any motions, none were made although defendant's counsel was present in court. The motion for continuance came two days later when the case was called for trial. The statement of counsel that defendant had been sick was uncorroborated by any doctor's certificate or other proof. While counsel stated that he had not interviewed a single witness, he failed to say that defendant had a single witness for him to interview, and the record does not suggest any.

Employment of counsel does not excuse an accused from giving proper attention to his case; he has the duty to be diligent in his own behalf. "When a man has a case in court the best thing he can do is to attend to it." *Pepper v. Clegg,* 132 N.C. 312, 43 S.E. 906. Had defendant desired to employ additional counsel, it behooved him to make timely arrangements and not to wait until the day of the trial, particularly when he had already been granted one continuance in order to prepare. The expression of a desire to employ additional counsel, postponed until the day of the trial, may not be used as a device for delay. If, because of circumstances beyond his control, defendant could not have a fair trial at that term, it was incumbent upon him to detail those circumstances in an affidavit as specified in G.S. 1-176. Furthermore, defendant is in no position to complain of the judge's failure to continue No. 4778 after he himself suggested and agreed that the three additional cases, which the solicitor had not intended to try then, should be consolidated and tried with it.

We think this case is controlled by *State v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520, where Ervin, J., said:

". . . A continuance ought to be granted if there is an apparent probability that it will further the ends of justice. Consequently, a postponement is proper where there is a belief that material evidence will come to light and such belief is reasonably grounded on known facts. But a mere intangible hope that something helpful to a litigant may possibly turn up affords no sufficient basis for delaying a trial to a later term. *S. v. Madison,* 49 W. Va. 96, 28 S.E. 492.

"A painstaking consideration of the record engenders a somewhat firm conviction that counsel for the prisoner suffered from lack of any substantial defense rather than from any scarcity of time. Be their zeal for their client's cause ever so great, advocates cannot

make brick without straw. It all comes to this: the record fails to show that the requested continuance would have enabled the prisoner and his counsel to obtain additional evidence or otherwise present a stronger defense."

Assignment of error No. 2 relates to certain questions asked by his Honor which defendant contends constituted excessive participation by the judge in the trial. We have carefully examined each of the questions of which defendant complains. A number of them were asked by the solicitor and not by the judge; twelve were asked by the judge in the absence of the jury. Of the questions asked by the trial judge, each was painstakingly and properly phrased in an obvious effort to clarify and screen the testimony so as to prevent the introduction of any incompetent evidence. This assignment of error is overruled.

Assignment of error No. 3 is "That his Honor erred in allowing the defendant Winston Phillip to cross-examine the State's witness William S. Best as follows: . . ." Defendant then sets out in question and answer form the entire cross-examination of the witness. This assignment of error is based on no exception. The trial judge neither required nor suggested that defendant himself cross-examine the witness. Apparently the defendant proceeded to do so by prearrangement with his counsel. Had the solicitor objected, no doubt his Honor would have required counsel to conduct the cross-examination. A party has the right to appear *in propria persona* or by counsel, but this right is alternative. G.S. 1-11. One has no right to appear both by himself and by counsel. *New Hanover County v. Sidbury*, 225 N.C. 679, 36 S.E. 2d 242; *McClamroch v. Ice Co.*, 217 N.C. 106, 6 S.E. 2d 850; *Abernethy v. Burns*, 206 N.C. 370, 173 S.E. 899. However, the court did not intervene *ex mero motu* to stop the examination, and the record suggests nothing to indicate that it was incumbent upon him to do so in the interest of a fair trial. The defendant now contends that this judicial liberality, exercised in his favor at the time, entitles him to a new trial. If defendant's performance was indeed prejudicial to him, which does not appear, the mischief did not result from any action by the trial court. *State v. Pritchard*, 227 N.C. 168, 41 S.E. 2d 287.

Finally, the defendant challenges the definition of reasonable doubt in his Honor's charge to the jury:

"The burden is on the State to satisfy the jury beyond a reasonable doubt of his guilt as to each of the charges in these four Bills of Indictment. A reasonable doubt is a fair and honest doubt based on common sense and reason and one that leaves your mind so that you cannot say that you have an abiding conviction to a moral certainty of the defendant's guilt."

We perceive nothing in this charge calculated to affect defendant's rights adversely or, considering the evidence in the case, likely to have misled the jury in any way. *State v. Mostella,* 159 N.C. 459, 74 S.E. 578. The import of the instruction is that, after applying reason and common sense to the whole case, if the jurors are not satisfied to a moral certainty of the defendant's guilt, they have a reasonable doubt. The statement does not contain the error which necessitated a new trial in *State v. Braxton,* 230 N.C. 312, 52 S.E. 2d 895 where reasonable doubt was defined as "a doubt based upon reason and common sense and *growing out of the evidence in the case.*" The Court held that, considering the nature of the proof in that case, having used the expression "growing out of the evidence in the case" it was error not to add "or the lack of evidence" or some phrase of similar import. *Cf. State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133.

"The words 'reasonable doubt' in themselves are about as near self-explanatory as any explanation that can be made of them." *State v. Wilcox,* 132 N.C. 1120, 44 S.E. 625. In the absence of a request, trial judges are not required to define the term "beyond a reasonable doubt" in charging the jury in a criminal case. However, it is their custom to do so. Therefore, as *Denny, J.,* (now C. J.) suggested in *State v. Hammonds, supra,* it would eliminate this particular recurring assignment of error if they would use one of the succinct and approved definitions contained in that opinion.

A careful examination of the record leads us to the conclusion that the defendant has had a fair trial. In it we find

No error.