EZRA MEIR AND WIFE, VIOLET S. MEIR v. RUSSELL C. WALTON, JR., AND WIFE, MARGIE G. WALTON.

No. 6810SC379

(Filed 16 October 1968)

1. Judgments § 24—  default judgment — excusable neglect

In order to have a judgment set aside under G.S. 1-220, the movant must show excusable neglect.

2. Judgments § 25—  due care by defendant

A defendant duly served with process is required to give his defense that attention which a man of ordinary prudence usually gives to his important business affairs.

3. Judgments § 25—  attorney's neglect imputed to defendant

Where defendant turned the suit papers in a civil action over to an at-

torney and thereafter made no inquiry as to whether anything had been done with respect thereto, the neglect of the attorney to take action to defend the suit is imputable to defendant, and the court's denial of his motion under G.S. 1-220 to set aside the default judgment taken against him will not be disturbed.

**4. Judgments § 25—  setting aside default judgment — discretionary**

The discretionary refusal of a motion to set aside a default judgment on the ground of excusable neglect will be upheld on appeal in the absence of abuse of discretion.

APPEAL by defendants from *Cowper, J.,* 2 June 1968 Non-Jury Assigned Session, WAKE Superior Court.

This action arises from a boundary line dispute between plaintiffs and defendants who are adjoining property owners. On 21 April 1966, the parties entered into an arbitration agreement providing that John S. Lawrence, Registered Surveyor, go upon the properties of the parties, determine where the true and correct dividing line lies, and mark such line upon the ground. The agreement further provided that the parties would be bound by Lawrence's determination of the line; that quitclaim deeds as necessary would be given; that the parties would bear equally the expenses of the arbitrator; that he would have 60 days from the date of the agreement to complete his work, and the parties would execute the necessary deeds and pay the charges of the arbitrator within 30 days after the arbitrator completed his work.

On 19 October 1967, plaintiffs brought this action. The agreement was attached to the complaint market Exhibit A and incorporated therein by reference. The complaint alleged that the arbitrator determined the true and correct line, prepared a map thereof dated 27 February 1967, which is duly recorded in the Wake County Registry; that the parties have paid the expenses of the arbitrator; that plaintiffs have recognized the line as located by the arbitrator and in June 1967 executed and delivered to defendants for their execution an instrument recognizing and establishing the line; that defendants held said instrument without objection raised for approximately one month and by word and deed led plaintiffs to believe it would be executed; that despite repeated requests defendants refused to execute the instrument. The complaint alleges acts of defendants constituting trespasses, and asks for a temporary restraining order, a show cause order, $400.00 damages, that defendants be ordered to recognize the line established by the arbitrator and execute the quitclaim deed provided for in the agreement or, in the alternative,

for the court to find the line established by the arbitrator to be the true and correct boundary line.

On 21 November 1967 upon hearing on the show cause order judgment was entered allowing both plaintiffs and defendants to use the dirt road running generally between their properties and enjoining defendant Russell Walton, Jr., from tampering with the fence erected by plaintiffs or otherwise interfering with them in the use of their property.

On 5 March 1968 plaintiffs' attorneys wrote the following letter to counsel for defendants:

"The above entitled action was instituted on October 19, 1967, at which time a complaint was filed. A temporary restraining order was signed on November 21, 1967. We agreed to an extension of time to and including the 20th day of December 1967, for the defendants to file answer in this matter. Thereafter, we discussed the possibility of a settlement of all matters in controversy and verbally agreed that the defendants' answer would not be due until the possibilities of a settlement had been fully explored.

We feel that our last settlement proposal was very reasonable and we feel that enough time has elapsed for an acceptance or rejection of this proposal. Furthermore, our client is insisting that this matter be tried in order that there might be final determination as soon as possible.

Under the circumstances, we feel that we must demand that our settlement proposal be either accepted or rejected by Monday, March 11, 1968. In the event that there is a rejection, we must further insist that an answer be filed within 30 days from March 11, 1968, in order that this might be placed on the trial calendar."

On 6 March 1968 the following letter was written to defendant Russell C. Walton, Jr., by Mr. Henry Sink, defendants' counsel at that time:

"We forward herewith photocopy of letter received from Manning, Fulton and Skinner, Attorneys, with regard to the boundary matter.

I feel very strongly that the original offer of compromise settlement should be accepted. We had previously agreed in conference among you, Bill Allen and myself to this offer of compromise settlement. Also, I do not believe that we have any reasonable chance of upsetting the arbitration contract or the resulting ar-

bitration (save with regard to the patent error by the surveyor in carrying the Meir boundary line to the south line of the Reedy Creek Road Extension). Since you agreed to the compromise proposal which Allen and I submitted to Manning, Fulton and Skinner and which was basically accepted by them, I do not feel that we can represent you further in the event of litigation. We will of course be pleased to continue to represent you in winding up the compromise settlement, if you choose to accept it.

Please consider these matters and advise me of your wishes. I will be glad to turn over any and all materials in my files to any attorney chosen by you to continue with the litigation, if you decide to proceed. Of course, I will also give such attorney any additional information which I may have in order that he may proceed with the litigation in your best interest."

On 26 April 1968 plaintiffs moved for and obtained judgment by default and inquiry, copy of which was forwarded to Mr. Sink and by him forwarded to defendant Russell C. Walton, Jr., on 30 April 1968.

On 3 June 1968 defendants moved to vacate and set aside the judgment alleging excusable neglect and meritorious defense. Proposed answer was attached to the motion.

Upon hearing on the motion, defendant Russell C. Walton, Jr., testified that upon receipt of Mr. Sink's letter of 6 March 1968, he turned the case over to a new attorney on 13 March 1968, from whom he heard nothing until on or about 2 May 1968, when he was advised by the attorney by letter that he would not handle the matter. Defendant Walton further testified that he thought the 30-day period for answer in Mr. Gulley's letter to Mr. Sink referred to an answer to the negotiations and not to the original complaint. He testified that he did not communicate with the attorney to whom he had turned over the case in any way from the time he conferred with him on 13 March 1968 to 30 April 1968.

The court entered an order denying defendants' motion to vacate and set aside the judgment by default and inquiry, and defendants appealed.

*Crisp, Twiggs & Wells by L. Bruce McDaniel for defendant appellants.*

*Manning, Fulton and Skinner by Jack P. Gulley for plaintiff appellees.*

MORRIS, J.

Defendants contend that the court committed error in three respects: (1) in finding as a fact and concluding as a matter of law that defendants failed to show surprise or excusable neglect in their failure to file an answer, (2) in finding as a fact and concluding as a matter of law that defendants failed to show any meritorious defense to plaintiff's cause of action, and (3) in finding as a fact that defendants retained the proposed agreement establishing a boundary line for approximately one month before raising, for the first time, the objection that the survey had not been completed within 60 days.

G.S. 1-220 provides that, at any time within one year after notice thereof, the judge shall, upon such terms as may be just, relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect.

[1]    In order to have a judgment set aside under the statute, the movant must show excusable neglect. 5 Strong, N. C. Index 2d, Judgments, § 24; *Whitaker v. Raines*, 226 N.C. 526, 39 S.E. 2d 266.

Defendants contend that they turned the matter over to an attorney and thereafter relied on him to do whatever needed to be done to protect them, asserting that the neglect of the attorney is not chargeable to them.

Finding of fact No. 11 reads as follows: "That the defendant Russell C. Walton, Jr., did not contact or have any communications with Eugene Smith, Esquire, between the 13th day of March, 1968, and the time that he received a copy of the judgment by default and inquiry." Defendants do not except to this finding of fact, and it is amply supported by the evidence.

[2]    We think this case is controlled by the principles enunciated in *Jones v. Fuel Co.*, 259 N.C. 206, 209, 130 S.E. 2d 324, where the Court, speaking through Denny, C.J., said:

"It is generally held under the above statute that '(p)arties who have been duly served with summons are required to give their defense that attention which a man of ordinary prudence usually gives his important business, and failure to do so is not excusable.' Strong, North Carolina Index, Judgments, § 22; *Whitley v. Caddell*, 236 N.C. 516, 73 S.E. 2d 162; *Pate v. Hospital*, 234 N.C. 637, 68 S.E. 2d 288; *Whitaker v. Raines*, 226 N.C. 526, 39 S.E. 2d 266; *Johnson v. Sidbury*, 225 N.C. 208, 34 S.E. 2d 67.

Where a defendant engages an attorney and thereafter dili-

gently confers with the attorney and generally tries to keep informed as to the proceedings, the negligence of the attorney will not be imputed to the defendant. If, however, the defendant turns a legal matter over to an attorney upon the latter's assurance that he will handle the matter, and then the defendant does nothing further about it, such neglect will be inexcusable. *Moore v. Deal*, 239 N.C. 224, 79 S.E. 2d 507; *Pepper v. Clegg*, 132 N.C. 312, 43 S.E. 906."

In *Moore v. Deal*, 239 N.C. 224, 79 S.E. 2d 507, the Court set out the general principles of law established by its decisions applicable where a litigant relies on neglect of counsel to set aside a judgment by default. There the Court said that "the mere employment of counsel is not enough. *Lumber Co. v. Chair Co.*, 190 N.C. 437, 130 S.E. 12. The client may not abandon his case on employment of counsel, and when he has a case in court he must attend to it. *Roberts v. Allman*, 106 N.C. 391, 11 S.E. 424; *Pepper v. Clegg*, 132 N.C. 312, 43 S.E. 906."

[3]   In our opinion, when defendant Russell C. Walton, Jr., turned the matter over to Mr. Smith and thereafter made no inquiry as to whether anything had been done, the neglect of the attorney is imputable to him, and he has shown no excusable neglect.

[4]   In addition, the motion to set aside the judgment by default and inquiry was denied in the court's discretion. His decision will be upheld in the absence of abuse of discretion. *Jones v. Fuel Co.*, *supra*. We find no abuse of discretion.

In the absence of sufficient showing of excusable neglect, the question of meritorious defense becomes immaterial. *Stephens v. Childers*, 236 N.C. 348, 72 S.E. 2d 849, and cases there cited. We, therefore, do not discuss defendants' remaining assignments of error.

Affirmed.

MALLARD, C.J., and CAMPBELL, J., concur.