STATE OF NORTH CAROLINA v. ELIZABETH CRADLE

No. 30

(Filed 10 May 1972)

1. Constitutional Law § 32— right to counsel

If an accused can afford counsel he has a constitutional right in all criminal cases to be represented by counsel selected and employed by him.

2. Constitutional Law § 32; Criminal Law § 21— preliminary hearing — right to counsel

A preliminary hearing is a critical stage of the State's criminal process at which an accused has a right under the Sixth and Fourteenth Amendments to assistance of counsel; furthermore, by statute in North Carolina, an indigent person has the right to the services of counsel at a preliminary hearing in any felony case. G.S. 7A-451(a)(1), (b)(4).

3. Constitutional Law § 32— appointment of counsel — indigency

The trial court erred in finding that defendant was not an indigent and in refusing to appoint counsel to represent her at her preliminary hearing on a felony charge where defendant's affidavit of indigency stated that she had no income, no money and no property except a 1958 Chevrolet which was paid for, and that she had three

---

State v. Cradle

---

children, an unemployed husband and owed $3,000, and nothing in the record refutes or contradicts the import of defendant's affidavit of indigency. G.S. 7A-450(a).

**4. Criminal Law § 21— preliminary hearing — function**

In North Carolina, a preliminary hearing is simply an inquiry into whether the accused should be discharged or whether there is probable cause to submit the State's evidence to the grand jury and seek a bill of indictment to the end that the accused may be placed upon trial.

**5. Criminal Law § 21— preliminary hearing — probable cause**

The district judge, when sitting as a committing magistrate as authorized by G.S. 7A-272(b), does not render a verdict but passes only on the narrow question of whether probable cause exists and, if so, the fixing of bail if the offense is bailable; and a discharge of the accused is not an acquittal and does not bar a later indictment.

**6. Constitutional Law § 32; Criminal Law § 21— preliminary hearing — failure to appoint counsel — harmless error**

The failure to appoint counsel to represent an indigent defendant at her preliminary hearing on charges of forgery and uttering a forged check was harmless error beyond a reasonable doubt where the testimony at the hearing was not transcribed and was never put before the trial court, the jury which convicted defendant never knew that a preliminary hearing had been conducted, the record does not show that defendant pled guilty or made any disclosures at the preliminary hearing which were used against her at the trial, and the record does not show the loss of any defenses or pleas or motions by failure to assert them at the preliminary hearing.

**7. Criminal Law § 21— preliminary hearing — termination by court — probable cause**

Counsel's ability at the preliminary hearing to "fashion a vital impeachment tool for use in cross-examination of the State's witnesses at trial" or to "discover the case the State has against his client" is greatly diminished by the authority of the court to terminate the preliminary hearing once probable cause is established.

**8. Criminal Law § 91— motion for continuance — appellate review**

A motion for continuance is ordinarily addressed to the discretion of the trial judge and his ruling thereon is not subject to review absent abuse of discretion; however, when the motion is based on a right guaranteed by the Federal and State Constitutions, the question presented is one of law and not of discretion, and the decision of the trial court is reviewable.

**9. Constitutional Law § 31— right of confrontation**

The right to the assistance of counsel and the right to face one's accusers and witnesses with other testimony are guaranteed by the Sixth Amendment to the U. S. Constitution, which is made applicable to the states by the Fourteenth Amendment, and by Article I, §§ 19 and 23 of the N. C. Constitution.

State v. Cradle

10. **Constitutional Law § 32— right to counsel — time to prepare defense**

   The right to the assistance of counsel includes the right of counsel to confer with witnesses, to consult with the accused and to prepare his defense.

11. **Constitutional Law § 31; Criminal Law § 91— denial of continuance — right to confrontation — right to effective assistance of counsel**

   Defendant's rights of confrontation and the effective assistance of counsel were not violated by the denial of a motion for continuance made on the ground that she needed to get information from her home in order to know what witnesses she wanted subpoenaed, where defendant was afforded the opportunity to go home during the noon hour to get anything she desired, defendant's counsel represented her in four other pending cases and they had conferred at length concerning them, defendant could have conferred with her counsel concerning this case for six days prior to the trial, counsel knew of his appointment and could have conferred with defendant for four days prior to the trial, both knew the case was calendared for trial, and neither defendant nor her counsel revealed to the court the name of any witness defendant allegedly had at her home which she desired to subpoena or what she expected to prove by any such witness.

12. **Constitutional Law § 36; Forgery § 2— sentence for uttering — cruel and unusual punishment**

   A sentence of seven to ten years for uttering a forged check in the sum of $50 is not cruel and unusual punishment, since it is within the maximum authorized by statute. G.S. 14-119; G.S. 14-120.

13. **Constitutional Law § 36; Criminal Law § 138— punishment — province of legislature**

   It is within the province of the General Assembly and not the judiciary to determine the extent of punishment which may be imposed on those convicted of crime.

DEFENDANT appeals from decision of the Court of Appeals, 13 N.C. App. 120, upholding judgment of *Copeland, S.J.,* 7 June 1971 Session, ORANGE Superior Court.

Defendant was charged in a two-count bill of indictment with forgery and uttering a forged check.

The State's evidence tends to show that on 15 January 1971 at approximately 2 p.m. defendant entered the place of business of Central Carolina Farmers, Inc., in Carrboro and requested Mrs. Irma Davis, who worked there, to cash a fifty-dollar check. Mrs. Davis asked who the maker was, and defendant replied: "That's the man I work for." The name appearing on the check as maker was Bennie Duty, and the name appearing on the check as payee was Lena Mae Hopkins. Defendant endorsed the

State v. Cradle

check in the presence of Mrs. Davis by writing the name "Lena Mae Hopkins" on the back of the check, and Mrs. Davis thereupon took the check and gave defendant fifty dollars in currency.

The check was deposited in due course and returned stamped "Account Closed." Mrs. Davis contacted the police and described the person who gave her the check as "a black female, with red hair, small build and freckles. On this particular date, January 15, 1971, she was wearing a dark blue dress. I was questioned by Officer Blackwood as to how many times I had seen Elizabeth Cradle prior to the date of January 15, 1971, to which I replied that I had seen her fifty, seventy-five or more times." Although she had seen Elizabeth Cradle many times, Mrs. Davis did not know her name. However, based on the information and the description, the officer swore out a warrant for Elizabeth Cradle.

Bennie R. Duty testified that he did not sign the check and did not authorize anyone else to sign his name to it. He identified the check in question as one of his personalized checks, with his name (Bennie R. Duty) and his address (115 Carr Street, Carrboro) printed on it. He said that for several months prior to 1 February 1971 he had been in prison serving a six-month term for driving under the influence of alcohol and had not been at his home address during the month of January 1971.

Earl Eversole testified that he lived at 115 Carr Street, Carrboro, North Carolina, in the same house where Bennie Duty lived; that Mr. Duty was absent during the month of January; that in December 1970, between Christmas and New Year's, defendant came to his house and cleaned up a room adjoining the room in which Mr. Duty lived; that after Mr. Duty returned home he complained about his checks being gone—"he calculated that he was missing about sixty checks." This witness stated that the room defendant cleaned opens out into the hall and doesn't open into Mr. Duty's room; that the house stays open rather than locked—"I do not lock the door."

The State rested its case and defendant moved for a directed verdict of not guilty as to both counts. As to the count charging forgery, the motion was allowed; as to the count charging uttering, the motion was denied.

Defendant, as a witness in her own behalf, testified that she is married to Irving Sylvester Cradle, is twenty-two years of age, and has three children. Neither she nor her husband has

ever been on welfare. For the last six months she has been staying home taking care of her children. "My mother's name is Lena Mae Rigsbee but she went under the name of Lena Mae Hopkins. She wasn't alive on January 15, 1971; she died about two years ago."

The defendant further testified that at two o'clock in the afternoon of January 15 she was at home "as far as I can remember." She denied she had ever seen the check in question and denied going into the Farmers Exchange on January 15. She admitted working for Mr. Eversole between Christmas and New Year's cleaning an upstairs room for him but denied having gone into Mr. Duty's room, "although I have known him for two or three years." She said she had never taken anything from any of the rooms at Mr. Eversole's. She said she did not know Mrs. Davis and had never given her a check of any kind.

Defendant's motion for directed verdict of not guilty on the uttering count in the bill of indictment was renewed at the close of all the evidence and denied. Following the arguments and the charge of the court, the jury convicted defendant of uttering a forged check, as charged, and defendant was sentenced to a term of not less than seven nor more than ten years. The Court of Appeals found no error, and defendant appealed to the Supreme Court, allegedly as of right, asserting involvement of substantial constitutional questions and assigning errors noted in the opinion.

*Roy M. Cole; Loflin, Anderson & Loflin by Thomas F. Loflin, III, Attorneys for defendant appellant.*

*Robert Morgan, Attorney General; Charles M. Hensey, Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

Following her arrest defendant signed an affidavit of indigency on 22 March 1971. The affidavit stated that she was unemployed, had no income, no money, and no property except a 1958 model Chevrolet which was fully paid for. Her affidavit further stated that she had three children, an unemployed husband, and owed $3,000. She requested assignment of counsel. On 23 March 1971 District Judge Cates signed the following order denying counsel:

State v. Cradle

"The above named person, being a party to a proceeding or action listed in G.S. 7A-451(a), specifically, uttering forged check, and, having requested the assignment of counsel; now, therefore,

It appearing to the undersigned Judge from the affirmations made by the applicant and after due inquiry made, that the applicant is financially able to provide the necessary expenses of legal representation, it is, therefore,

ORDERED AND ADJUDGED that he is not an indigent, and his request is hereby denied."

Thereafter, a preliminary hearing was conducted before Judge Cates on 30 March 1971, probable cause found, and defendant was bound over to superior court for trial. Her appearance bond was fixed at $1,000 which she posted and remained at liberty until her trial in superior court. Insofar as the record discloses, she was not represented by counsel at the preliminary hearing. Defendant assigns as error the failure of Judge Cates to appoint counsel to represent her at the preliminary hearing.

[1]  If an accused can afford counsel he has a constitutional right in all criminal cases to be represented by counsel selected and employed by him. *State v. Morris,* 275 N.C. 50, 165 S.E. 2d 245 (1969). If the accused is indigent and charged with a felony or other *serious* offense, what are his rights with respect to assigned counsel at a preliminary hearing?

[2]  A preliminary hearing is a critical stage of the State's criminal process at which an accused has a constitutional right under the Sixth and Fourteenth Amendments to assistance of counsel. *Coleman v. Alabama,* 399 U.S. 1, 26 L.Ed. 2d 387, 90 S.Ct. 1999 (1970). *Compare, Gasque v. State,* 271 N.C. 323, 156 S.E. 2d 740 (1967); *State v. Cason,* 267 N.C. 316, 148 S.E. 2d 137 (1966). Furthermore, by statute in North Carolina, an indigent person has the right to the services of counsel at a preliminary hearing in any felony case. G.S. 7A-451(a)(1), (b)(4). An indigent person is defined as one "who is financially unable to secure legal representation and to provide all other necessary expenses of representation. . . . " G.S. 7A-450(a). The court makes the final determination of indigency, G.S. 7A-453(b), and this may be determined or redetermined by the

court at any stage of the proceeding at which the indigent is entitled to representation. G.S. 7A-450(c).

[3]   Here, defendant was charged with a felony, and the only evidence of record bearing upon the question of indigency is her affidavit. That affidavit, if believed, certainly shows that she "was financially unable to secure legal representation and to provide all other necessary expenses." The order signed by Judge Cates in which he refused to assign counsel recites that "from the affirmations made by the applicant and after due inquiry made" it appears to the judge that the applicant is financially able to provide the necessary expenses of legal representation. The record does not reveal what inquiry the judge made and no facts are found. Nothing in the record refutes or contradicts the import of defendant's affidavit of indigency. On this record we hold that defendant was an indigent within the meaning of G.S. 7A-450(a) and was entitled to be represented by appointed counsel at the preliminary hearing conducted before Judge Cates on 30 March 1971. Failure to assign counsel was error. It is noteworthy that Judge Copeland, acting upon the same affidavit, "and after due inquiry made," found defendant indigent on 1 June 1971 and appointed Attorney Roy M. Cole to represent her at the trial in superior court and, following her conviction, upon appeal.

Whether defendant was prejudiced by the absence of counsel at the preliminary hearing must now be determined. "The test to be applied is whether the denial of counsel at the preliminary hearing was harmless error under *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824, 24 A.L.R. 3d 1065 (1967)." *Coleman v. Alabama, supra.*

[4, 5]   In North Carolina, a preliminary hearing is simply an inquiry into whether the accused should be discharged or whether, on the other hand, there is probable cause to submit the State's evidence to the grand jury and seek a bill of indictment to the end that the accused may be placed upon trial. The district judge, when sitting as a committing magistrate as authorized by G.S. 7A-272(b), does not render a verdict; and a discharge of the accused is not an acquittal and does not bar a later indictment. *State v. Hargett*, 255 N.C. 412, 121 S.E. 2d 589 (1961). Thus a preliminary hearing is not a trial; and the district judge, in his capacity as committing magistrate, passes only on the narrow question of whether probable cause exists and, if so,

the fixing of bail if the offense is bailable. G.S. 15-94; G.S. 15-95; *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972).

[6] The record on appeal in this case is completely silent with respect to what occurred at the preliminary hearing. As defendant correctly states in her brief: "All that the record shows is that one was held and probable cause against the defendant found after the defendant submitted an affidavit of indigency and was denied counsel."

The record does not show that defendant pled guilty or made any disclosures at the preliminary hearing which were used against her at the trial, as in *White v. Maryland,* 373 U.S. 59, 10 L.Ed. 2d 193, 83 S.Ct. 1050 (1963).

The record does not show that the transcript of any testimony given at the preliminary hearing was used against defendant at her trial, thus denying her the right of confrontation, as in *Pointer v. Texas,* 380 U.S. 400, 13 L.Ed. 2d 923, 85 S.Ct. 1065 (1965).

The record does not show the loss of any defenses or pleas or motions by failure to assert them at the preliminary hearing. *See Hamilton v. Alabama,* 368 U.S. 52, 7 L.Ed. 2d 114, 82 S.Ct. 157 (1961).

The record does not show that the absence of counsel at the preliminary hearing in any way contaminated the proceedings at the trial in superior court. The testimony at the hearing was not transcribed and was never put before the trial court. The jury which convicted defendant never knew that a preliminary hearing had been conducted or that probable cause had been found and defendant bound over for trial. Surely defense counsel would have included in the statement of case on appeal each and every circumstance and event which was considered prejudicial to the defendant at her trial. The absence of all such circumstances is compelling proof of their nonexistence. The record contains nothing save the bare assertion of prejudice and the contention that defendant's conviction cannot stand because she was not represented by counsel at the preliminary hearing.

[7] In light of the record before us it would require reaching and stretching to conclude that the presence of counsel at the preliminary hearing would have enabled defendant to elicit

favorable testimony at her trial which was irretrievably lost due to absence of counsel at the preliminary hearing. That defense counsel might have done a better job at the trial had he been present at the preliminary hearing is sheer speculation. Moreover, the presiding judge may hear only one witness, find probable cause, and end the hearing. Thus counsel's ability at the preliminary hearing to "fashion a vital impeachment tool for use in cross-examination of the State's witnesses at trial," or to "discover the case the State has against his client," *Coleman v. Alabama, supra,* is greatly diminished by the authority of the court to terminate the preliminary hearing once probable cause is established. *See Adams v. Illinois,* 405 U.S. 278, 31 L.Ed. 2d 202, 92 S.Ct. 916 (decided March 6, 1972).

It was held in *Chapman v. California, supra* [386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824, 24 A.L.R. 3d 1065 (1967)] that some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt. In fashioning a harmless error rule the Court said: "We prefer the approach of this Court in deciding what was harmless error in our recent case of *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229. There we said: 'The question is whether there is a reasonable possibility that the [error] complained of might have contributed to the conviction.' . . . We, therefore, do no more than adhere to the meaning of our Fahy Case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

Applying the *Chapman* test to the facts in this case, we see no reasonable possibility that the absence of counsel at the preliminary hearing could have contributed to defendant's conviction at her trial in superior court. In our view it was harmless error beyond a reasonable doubt and we so hold. *Harrington v. California,* 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969) ; *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970) ; *State v. Fletcher and Arnold,* 279 N.C. 85, 181 S.E. 2d 405 (1971) ; *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972). Defendant's first assignment of error is overruled.

Attorney Roy M. Cole was appointed to represent defendant in this case on 1 June 1971 and was informed of his appoint-

ment on 3 June 1971. When the case was called for trial on 7 June 1971, counsel moved for a continuance on the ground that he had not had time to prepare for trial and to subpoena witnesses. He had been previously appointed to represent defendant in four other cases and had conferred at great length with the defendant concerning them. In a conference with the solicitor on June 3 or 4 Mr. Cole indicated he was ready to go to trial in this case and was advised by the solicitor that not only this case but also other cases pending against the defendant were on the calendar and might be called during the week of June 7. When this case was called on June 7, defendant informed her counsel that she didn't know what witnesses she wanted subpoenaed until she went home. Mr. Cole then stated to the court that he was informed by his client that she needed to "get information that she has at her home regarding this case and to inform me what witnesses she desires to subpoena for this case; these being the reasons for the motion for continuance." The record discloses defendant was afforded an opportunity to go home during the noon hour to get anything she desired. The motion for continuance was denied, and this constitutes defendant's second assignment of error.

[8] A motion for continuance is ordinarily addressed to the discretion of the trial judge and his ruling thereon is not subject to review absent abuse of discretion. *State v. Stinson,* 267 N.C. 661, 148 S.E. 2d 593 (1966). However, when the motion is based on a right guaranteed by the Federal and State Constitutions, the question presented is one of law and not of discretion, and the decision of the court below is reviewable. *State v. Phillips,* 261 N.C. 263, 134 S.E. 2d 386 (1964).

[9, 10] The right to the assistance of counsel and the right to face one's accusers and witnesses with other testimony are guaranteed by the Sixth Amendment to the Federal Constitution which is made applicable to the States by the Fourteenth Amendment, and by Article I, Sections 19 and 23 of the Constitution of North Carolina. The right to the assistance of counsel includes the right of counsel to confer with witnesses, to consult with the accused and to prepare his defense. *Avery v. Alabama,* 308 U.S. 444, 84 L.Ed. 377, 60 S.Ct. 321 (1940); *Powell v. Alabama,* 287 U.S. 45, 77 L.Ed. 158, 53 S.Ct. 55 (1932); *State v. Farrell,* 223 N.C. 321, 26 S.E. 2d 322 (1943). Hence, the question presented by this assignment is whether

State v. Cradle

the refusal of the trial court to grant defendant's motion for a continuance impinged upon her constitutional right to confrontation and effective representation by counsel by denying her a reasonable time within which to prepare and present her defense. If so, she is entitled to a new trial. If not, denial of the continuance was a discretionary matter not subject to review except in case of manifest abuse.

[11] The record in this case does not support defendant's contention that she has been denied her constitutional rights of confrontation and assistance of counsel. She and her counsel were well acquainted. He represented her in four other pending cases and they had conferred at length concerning them. She could have conferred with him concerning this case, had she tried, for six days prior to the trial. Counsel knew of his appointment and could have conferred with defendant for four days prior to the trial. Both knew this case was calendared for trial during the week of June 7. Yet, insofar as the record shows, they did nothing. Moreover, neither defendant nor her counsel revealed to the court the name of a single witness defendant allegedly had at her home which she desired to subpoena. What she expected to prove by these witnesses must be surmised. If she went home to get the list of witnesses, the record fails to show it. The oral motion for continuance is not supported by affidavit or other proof. In fact, the record suggests only a natural reluctance to go to trial and affords little basis to conclude that absent witnesses, if they existed, would ever be available. We are left with the thought that defense counsel suffered more from lack of a defense than from lack of time. "Continuances should not be granted unless the reasons therefor are fully established. Hence, a motion for a continuance should be supported by an affidavit showing sufficient grounds. *State v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520 (1948)." *State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844 (1972). The facts show no abuse of discretion and no violation of defendant's constitutional rights by the court's refusal to continue the case. Defendant's second assignment of error is overruled.

[12] Defendant's third and final assignment of error in this Court is grounded on the contention that a sentence of seven to ten years for uttering a forged check in the sum of fifty dollars is cruel and unusual punishment prohibited by both State and Federal Constitutions.

We have consistently held that a sentence of imprisonment which is within the maximum authorized by statute is not cruel or unusual in a constitutional sense, unless the punishment provisions of the statute itself are unconstitutional. *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969) ; *State v. Robinson,* 271 N.C. 448, 156 S.E. 2d 854 (1967) ; *State v. Greer,* 270 N.C. 143, 153 S.E. 2d 849 (1967) ; *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966).

One who forges or utters forged paper in this State is guilty of a felony and may be punished by imprisonment in the county jail or State's prison for not less than four months nor more than ten years. G.S. 14-119; G.S. 14-120. Thus the judgment pronounced in this case is within the maximum authorized by law and must be upheld.

[13]  Defendant argues that the foregoing rule abdicates judicial functions to the legislative branch of government. No so. It is within the province of the General Assembly of North Carolina and not the judiciary to determine the extent of punishment which may be imposed on those convicted of crime. If the sentence pronounced here seems harsh, the executive branch of government acting through the Board of Paroles may lawfully commute it. Our function, however, is to pass upon errors of law; and in law there is no error.

Defendant's remaining assignments, five in number, relate to motions for nonsuit, mistrial, and to the court's charge. Defendant's supplemental brief filed in this Court does not discuss these assignments and does not refer to a discussion of them contained in defendant's brief filed in the Court of Appeals. Although they may be deemed abandoned under Rule 28, Rules of Practice in the Supreme Court *(State v. Strickland,* 254 N.C. 658, 119 S.E. 2d 781), we have carefully reviewed the assignments and find no merit in any of them. They are overruled without discussion.

For the reasons stated the decision of the Court of Appeals upholding the judgment of the trial court is

Affirmed.