STATE OF NORTH CAROLINA v. WAYMON EDWARD HARRIS

No. 130

(Filed 5 October 1976)

1. Criminal Law § 91— motion for continuance — appellate review

Ordinarily a motion for a continuance is addressed to the trial judge's sound discretion and his ruling is not subject to review on appeal in the absence of gross abuse; however, when the motion is based on a right guaranteed by the Federal and State Constitutions, the question presented is one of law and not of discretion, and the order of the court below is reviewable.

2. Constitutional Law §§ 31, 32— right to counsel — right of confrontation

The rights to the assistance of counsel and of confrontation of one's accusers and witnesses guaranteed by the Sixth Amendment to the U. S. Constitution and Article I, sections 19 and 23 of the N. C. Constitution include the right of an accused to have a reasonable time to investigate, prepare and present his defense; however, no set length of time for investigation, preparation and presentation is required, and whether defendant is denied due process must be determined upon the basis of each case.

3. Criminal Law § 91; Constitutional Law §§ 31, 32— denial of continuance — right to effective counsel — right of confrontation

Defendant's rights of confrontation of his accusers and to due process and effective assistance of counsel were not violated by the denial of his motion for continuance where: defendant was given a preliminary hearing; counsel was appointed for him seven weeks before trial; defendant was transferred to Central Prison but was returned to the county of his trial a week before the beginning of the trial; defendant's alleged accomplices were confined in the county jail; the State furnished defense counsel with copies of defendant's

statements to police officers; and defendant failed to show that he had been unable to confer with his counsel or that his counsel had been deterred from interviewing defendant's alleged accomplices.

**4. Jury § 7— juror tendered to defendant — reexamination and challenge by State**

The trial judge did not abuse his discretion in allowing the State to reexamine and challenge for cause a prospective juror who had been accepted by the State and tendered to defendant.

**5. Indictment and Warrant § 5— signature of grand jury foreman — presence of majority of grand jury**

The trial judge did not err in allowing the foreman of the grand jury to sign the bill of indictment for first degree murder without the presence of a majority of the grand jury in open court since G.S. 15-141 requires the *return* of the indictment in open court in the presence of the grand jury or a majority of them in capital cases, not that the foreman *sign* the indictment in the presence of the entire grand jury or a majority of them.

**6. Criminal Law § 162— necessity for objections, motions to strike**

When a specific question is asked, objection should be interposed immediately and before the witness has an opportunity to answer; however, when inadmissibility is not indicated before the witness answers, counsel should move to strike the answer or the objectionable part of it.

**7. Criminal Law § 85— testimony impugning defendant's character — absence of prejudice**

Defendant in this first degree murder prosecution was not prejudiced by a witness's testimony that defendant had demanded that she work as a prostitute since (1) the testimony might well have been admissible as evidence of prior acts to corroborate the witness's testimony that defendant had instructed her to make a "date" with deceased in order to rob him, and (2) the testimony was consistent with the sordid relationship between defendant and the witness as related in her other testimony.

**8. Searches and Seizures § 2; Criminal Law § 76— consent to search — voluntary statement to police**

The evidence on *voir dire* supported the trial court's findings that defendant consented to a search of his car and that defendant voluntarily stated to officers that a pistol found in the car belonged to him, and the court properly admitted into evidence the pistol, testimony relating to the finding of the pistol, and defendant's statement that the pistol was his.

**9. Criminal Law § 76— inculpatory statement — voluntariness — appellate review**

The trial judge's finding that an accused freely and voluntarily made an inculpatory statement will not be disturbed on appeal when the finding is supported by competent evidence even when there is conflicting evidence.

10. **Criminal Law § 75— transcript of in-custody statements — contention that portion erroneous**

Defendant's contention that a transcript of statements he purportedly made to police contained some things that he did not say did not go to the admissibility of the transcript but presented a question to be resolved by the jury.

11. **Criminal Law § 75— in-custody statements — failure to give copy to defendant**

The fact that defendant did not receive a copy of his inculpatory statements until a week before trial did not affect their admissibility where defendant failed to show that this delay hindered him in preparing or presenting his defense.

12. **Criminal Law § 87— leading questions**

The trial judge did not abuse his discretion in permitting the district attorney to ask witnesses two leading questions where the evidence elicited by the questions was merely cumulative, and where there was ample evidence of similar import in the record to render the answers given non-prejudicial.

13. **Criminal Law § 102— jury argument — erroneous statement of felony-murder law — absence of prejudice**

Though the district attorney's jury argument that felony-murder is a death resulting from acts committed in the process of committing "a crime" and that defendant would be guilty even if he went to deceased's house to assist another in committing "a larceny" erroneously indicated that one could be convicted of felony-murder for a homicide occurring in the commission of an offense of lesser grade than felony, such argument was not prejudicial to defendant where trial judge gave a full and accurate instruction on felony-murder, the judge directed the jury to apply only the law given to them by the court, and the district attorney told the jury that the judge would tell them what the law was.

14. **Criminal Law § 62— polygraph results — absence of objection**

While testimony as to the results of a polygraph test is not admissible to show the guilt or innocence of an accused, such evidence admitted without objection may be considered by the jury.

15. **Criminal Law §§ 62, 102— jury argument — lie detector results — supporting evidence**

Although the trial court in this felony-murder prosecution struck testimony that a lie detector test showed that defendant "had knowledge of the robbery," the district attorney's jury argument that a lie detector test showed defendant "had guilty knowledge" was supported by inferences from testimony, admitted without objection, that defendant had "failed" his lie detector test and that the results "showed sensitivity that it [defendant's participation] was possible."

16. **Criminal Law § 117— all evidence shows witness was accomplice — instruction on duty to scrutinize testimony**

When all of the evidence shows a witness to be an accomplice, the trial judge should instruct that the witness's testimony should

be carefully scrutinized without requiring any finding by the jury that the witness was an accomplice.

**17. Criminal Law § 117— instruction on accomplice testimony — harmless error**

While it would have been appropriate in this murder case for the trial judge to have instructed the jury that testimony of a State's witness should have been carefully scrutinized without having required any finding by the jury, the judge's instruction which required the jury to determine whether the witness was an accomplice did not constitute prejudicial error.

**18. Homicide § 30— felony-murder — failure to submit lesser offenses**

In this prosecution for murder committed in the perpetration of a robbery, evidence that defendant told the police that he and a male companion entered deceased's home to get a female companion who was in the home, that upon their entry deceased ran to defendant and bit his finger, and that defendant thereupon hit him on the head with his fist and left the dwelling was insufficient to require the court to submit to the jury the lesser included offenses of second-degree murder and voluntary manslaughter.

**19. Constitutional Law § 36; Homicide § 31— sentence of death vacated — substitution of life imprisonment**

Since the U. S. Supreme Court has invalidated the death penalty provisions of G.S. 14-17, the statute under which defendant was indicted, convicted and sentenced to death for first degree murder, the sentence of death imposed upon defendant is vacated and a sentence of life imprisonment is substituted therefor.

APPEAL by defendant from *Lupton, J.,* 14 April 1975 Session of ROCKINGHAM Superior Court. This case was docketed and argued as No. 58 at the Fall Term 1975.

The State's evidence tended to show that on the night of 8 January 1975, in response to calls for help, neighbors of Mr. Harry Hopper went to his home. They found Mr. Hopper bleeding profusely. The house was spattered with blood and particles of broken glass were found about the floor. The local police were summoned and after their arrival Mr. Hopper became unconscious and was carried to the hospital in Eden. After a short examination, he was transferred to Cone Hospital in Greensboro, North Carolina, where he underwent immediate surgery. Mr. Hopper never regained consciousness and died six days later. There was medical testimony to the effect that there were five separate contused lacerations on Mr. Hopper's head and that a blood clot was removed from between his skull and brain. There was also evidence that prior to 8 January 1975, the deceased was in good health except for a mild diabetic condition.

On 10 February 1975 SBI Agent Johnson and Officer Martin went to Albany, Georgia, where they found defendant, who told the officers that he had nothing to do with the robbing and killing of Harry Hopper. On the same occasion, the officers took a pistol from defendant's automobile. The seizure of the pistol will be more fully considered in the opinion.

The State offered the testimony of Phyllis Brown who testified that she and defendant left Dothan, Alabama, on 6 January 1975 and drove to Eden, North Carolina. They arrived on the evening of 7 January 1975 and spent that night with Mr. and Mrs. Troy Harvey. The next day they went to the home of her parents where defendant and her brother, David Briggs, repaired defendant's car. Later in the afternoon Briggs brought up the subject of robbing Mr. Hopper. They drove to Mr. Hopper's house and Phyllis went inside. In response to his invitation, she agreed to meet Mr. Hopper at 10:00 p.m. that night. Defendant and Briggs told her to keep the date with Hopper and they would go in and rob him. They then stopped and bought two toboggans. After checking into a room at the Holiday Inn in Reidsville, defendant made masks of the toboggans. The three of them left the motel room at about 8:50 p.m. They stopped at the Hopper house at 9:55 p.m. and Phyllis went inside. When Mr. Hopper made advances towards her, she attempted to delay him by asking for and receiving a pack of Winston cigarettes. As she started out the door, defendant and Briggs rushed in and dived on Mr. Hopper. Defendant said, "Give us your money old man and we will not hurt you." As she fled, Phyllis heard glass breaking and Mr. Hopper screaming. The men then ran to the car and they all returned to their motel room. Defendant washed blood off the money taken from Hopper and divided the twenty-eight dollars with Briggs. He also washed hair and blood from his pistol. The men changed their bloody clothes and put them in a plastic trash can liner. The three of them then left the motel and drove towards Greensboro. When they came to the Reedy Fork Creek bridge, they stopped and defendant threw the bag containing the bloody clothes into the water. They then drove back to Georgia. Defendant threatened to kill anyone who told on him.

Agent Johnson retrieved two pairs of pants, a plastic trash can liner, and a man's shoe from Reedy Fork Creek. Phyllis Brown testified that one pair of pants and the trash

can liner looked like ones she had seen in the motel room on the night of the robbery.

Defendant was arrested on 13 February 1975 and on 14 February 1975, he made a statement to police officers which was offered into evidence. The circumstances surrounding this statement and its contents will be discussed hereafter.

There was also evidence to the effect that defendant came to North Carolina in a red Chevrolet automobile bearing Georgia license plates and that a red Chevrolet automobile bearing a Georgia license plate was seen parked near the Hopper house on the afternoon and night of 8 January 1975. The State offered other evidence which was cumulative and corroborative.

Defendant offered no evidence.

The jury returned a verdict of guilty of murder in the first degree. Defendant appealed from judgment imposing a sentence of death.

*Attorney General Rufus L. Edmisten, by Isham B. Hudson, Jr., for the State.*

*Jesse S. Moore, Jr., and Leigh Rodenbough for the defendant appellant.*

BRANCH, Justice.

Defendant first contends that the trial judge erred by denying his motion for a continuance. He takes the position that the denial of his motion violated his constitutional rights of due process, confrontation of his accusers and his right to effective assistance of counsel.

[1, 2]   Ordinarily a motion for a continuance is addressed to the trial judge's sound discretion and his ruling is not subject to review on appeal in the absence of gross abuse. However, when the motion is based on a right guaranteed by the Federal and State Constitutions, the question presented is one of law and not of discretion, and the order of the court below is reviewable. *State v. Smathers,* 287 N.C. 226, 214 S.E. 2d 112; *State v. Phillip,* 261 N.C. 263, 134 S.E. 2d 386, *cert. denied,* 377 U.S. 1003, 12 L.Ed. 2d 1052, 84 S.Ct. 1939; *State v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520; *State v. Farrell,* 223 N.C. 321, 26 S.E. 2d 322. The rights to assistance of counsel and of confrontation of one's accusers and witnesses are guaranteed by

the Sixth Amendment to the Federal Constitution and by Article I, sections 19 and 23 of the North Carolina Constitution. *Avery v. Alabama,* 308 U.S. 444, 84 L.Ed. 377, 60 S.Ct. 321; *Powell v. Alabama,* 287 U.S. 45, 77 L.Ed. 158, 53 S.Ct. 55; *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296. It is implicit in these guarantees that an accused have a reasonable time to investigate, prepare and present his defense. However, no set length of time for investigation, preparation and presentation is required, and whether defendant is denied due process must be determined upon the basis of the circumstances of each case. *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335, *cert. denied,* 423 U.S. 918, 46 L.Ed. 2d 367, 96 S.Ct. 228; *State v. Hicks,* 282 N.C. 103, 191 S.E. 2d 593, *cert. denied,* 410 U.S. 967, 35 L.Ed. 2d 702, 93 S.Ct. 1445; *State v. Gibson, supra; State v. Utley,* 223 N.C. 39, 25 S.E. 2d 195; *State v. Whitfield,* 206 N.C. 696, 175 S.E. 93, *cert. denied,* 293 U.S. 556, 79 L.Ed. 658, 55 S.Ct. 114.

[3] The evidence in this case discloses that defendant was afforded a preliminary hearing and that counsel for defendant was appointed seven weeks before the case was called for trial. Defendant, who was a diabetic, was transferred to Central Prison in Raleigh and was returned to Rockingham County a week before the beginning of his trial. Defendant's alleged accomplices were confined in Rockingham County Jail during this period of time and the State had furnished defense counsel with copies of statements made by defendant to police officers. Defendant made his motion for continuance on the day the case was called for trial. He failed to support his motion with a showing that he had been unable to confer with counsel either in Central Prison or in Rockingham County. Neither was there any showing that he was deterred from interviewing defendant's alleged accomplices.

Defendant fails to show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense. Thus, the trial judge correctly denied defendant's motion for a continuance.

[4] Defendant next assigns as error the action of the trial judge in permitting the State to reexamine and challenge prospective Juror Jones for cause after the State had accepted and tendered the juror to defendant.

Under examination by the State, prospective Juror Jones indicated that he was not opposed to the imposition of the death penalty in appropriate cases. However, in response to defense counsel's questioning, the prospective juror stated that he would not return a verdict of guilty in the case even if he were satisfied beyond a reasonable doubt that defendant was guilty of murder in the first degree. The trial judge thereupon allowed the State to reexamine the prospective juror and to challenge him for cause.

Defendant relies upon the provisions of G.S. 9-21(b) which provides in pertinent part that "[t]he State's challenge, peremptory or for cause, must be made before the juror is tendered to the defendant."

In the recent case of *State v. McKenna,* 289 N.C. 668, 224 S.E. 2d 537, we stated that "[n]othing in G.S. 9-21(b) prohibits the trial court, in the exercise of its discretion before the jury is empaneled, from allowing the State to challenge *peremptorily or for cause* a prospective juror previously accepted by the State and tendered to the defendant." Accord: *State v. Harris,* 283 N.C. 46, 194 S.E. 2d 796, *cert. denied,* 414 U.S. 850, 38 L.Ed. 2d 99, 94 S.Ct. 143.

We hold that the trial judge did not abuse his discretion in allowing the State to reexamine and challenge the prospective Juror Jones.

**[5]** Defendant's next assignment of error is that the trial judge erred by allowing the foreman of the grand jury to sign the bill of indictment without the presence of the full grand jury or a majority of them in open court.

G.S. 15-141, pertinent to this assignment of error, provides:

> Grand juries shall return all bills of indictment in open court through their acting foreman, except in capital felonies, when it shall be necessary for the entire grand jury, or a majority of them, to return their bills of indictment in open court in a body.

The statute requires the *return* of the indictment in open court in the presence of the entire grand jury or a majority of them. The statute does not require that the foreman *sign* the indictment in the presence of the entire grand jury or a majority of them. In fact, under G.S. 15-141, endorsement by

the foreman of the grand jury was not essential to the validity of an indictment otherwise duly returned into open court. *State v. Avant,* 202 N.C. 680, 163 S.E. 806.

G.S. 9-22 requires that the grand jury consist of eighteen jurors. This record discloses that the grand jury returned into open court, with sixteen members being present, the following indictment marked "a true bill": "75 CR 1577C—State v. Waymon Edward Harris—Murder." Thus, it is clear that this bill of indictment was returned in open court in a body by a majority of the grand jury.

This assignment of error is overruled.

Defendant contends that the trial judge erred in failing to instruct the jury to disregard irrelevant and immaterial evidence elicited by the State.

The testimony pertinent to this assignment of error is as follows:

Q. What, if anything were you doing for the defendant during this time that you stayed together or what, if anything, was he doing for you?

A. Well he had demanded that I work as a prostitute.

Q. When was that demand first made on you?

A. At — — —

ATTORNEY MOORE: Objection Your Honor to any testimony on this.

THE COURT: Just a minute, Sustained.

[6] It is well established that when a specific question is asked, objection should be interposed immediately and before the witness has the opportunity to answer. However, when inadmissibility is not indicated before the witness answers, counsel should move to strike the answer or the objectionable part of it. 1 Stansbury's N. C. Evidence (Brandis Rev. 1973) § 27, p. 69. *State v. Little,* 278 N.C. 484, 180 S.E. 2d 17. However, in capital cases we will review assignments of error concerning admission of incompetent evidence even when there is no motion to strike when probable prejudice appears. *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10.

[7] Even though the judge sustained defendant's objection to the admission of this evidence, it might well have been relevant and admissible as evidence of prior acts to corroborate the witness's direct testimony that defendant had instructed her to get a "date" with Mr. Hopper. *State v. Browder,* 252 N.C. 35, 112 S.E. 2d 728. The evidence objected to was consistent with the relationship between defendant and the witness as related in her other testimony.

In any event, the effect of the challenged evidence was to impugn defendant's character. The record shows that defendant had previously instructed the witness Phyllis Brown to "make a date" with deceased in order to rob him. The witness Brown testified that defendant had made threats on her life and that although she had previously slept with him on several occasions, defendant "forced" her to sleep with him on the night before the robbery. We do not believe that the admission of this further evidence of an already established sordid relationship between defendant and Phyllis Brown resulted in prejudicial error.

This assignment of error is overruled.

[8] We turn to defendant's contention that the search of his automobile was illegal and that the evidence relating to the finding of the pistol (State's Exhibit 8), the pistol itself, and the statement by defendant that the pistol belonged to him, were therefore all erroneously admitted into evidence. Upon defendant's objection to this evidence, the trial judge correctly excused the jury and conducted a *voir dire* hearing, found facts, entered conclusions of law and ruled on the admissibility of the evidence. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755, *cert. denied,* 414 U.S. 874, 38 L.Ed. 2d 114, 94 S.Ct. 157.

On *voir dire,* police officers Ganelle, Martin and Johnson testified to the effect that they observed defendant in his red Chevrolet automobile in front of a liquor store in Albany, Georgia. They approached defendant and told him that they wanted to talk to him about his activities in North Carolina. Officer Ganelle also advised defendant that they would probably have to get a search warrant to search his automobile. At that time, defendant replied: "You won't need one. Go ahead and help yourself." The officers then asked defendant to accompany them to the police station for questioning and when he consented, Officer Martin drove defendant's car across the

street to the Cherokee Motel where they were advised defendant was staying. Upon entering the car Officer Martin discovered a .25 caliber pistol (State's Exhibit 8) in the console between the front seats. When he arrived at the Cherokee Motel, Officer Martin handed the pistol to Officer Ganelle and at that time defendant stated that it was his pistol. Officers Ganelle and Johnson also gave testimony which tended to show that defendant was not under arrest or in custody when the pistol was taken and the statement made. Neither was defendant subjected to any pressure or threats.

Defendant Harris testified, on *voir dire,* that he told the officers that they could look in the car and that there was nothing that he wanted to hide in the car. He admitted State's Exhibit 8 was his pistol.

The trial judge, after finding facts consistent with those above summarized, *inter alia,* concluded and ruled:

> . . . That the defendant freely and voluntarily and without any threats and promises consented to the search . . . that after being warned of his rights defendant waived his rights freely, voluntarily and without any promises or threats . . . and intelligently, freely and voluntarily stated to the officers . . . that the pistol, State's Exhibit 8, was his . . . that the search of the defendant's vehicle was legal and that the testimony of Officers Ganelle, Johnson, and Martin relating to the finding of the pistol and the statement made by the defendant that it was his pistol and that the pistol, itself, all are admissible into evidence and the objections of the defendant are overruled.

Where a person voluntarily consents to a search, he cannot complain that his constitutional and statutory rights were violated. *State v. Bishop* and *State v. Baskin* and *State v. Thompson* and *State v. McCain,* 272 N.C. 283, 158 S.E. 2d 511; *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741. It is also well settled in this jurisdiction that a statement voluntarily made is admissible into evidence. *State v. Keith,* 266 N.C. 263, 145 S.E. 2d 841.

In our opinion, the evidence supports the trial judge's findings and the findings in turn support the trial judge's conclusions and rulings. This Court is, therefore, bound by the findings, conclusions and rulings. *State v. Carey,* 285 N.C. 509, 206 S.E. 2d 222; *State v. Grant,* 279 N.C. 337, 182 S.E. 2d 400.

This assignment of error is overruled.

Defendant assigns as error the trial judge's ruling admitting into evidence State's Exhibit 19, a purported confession.

When the State offered its Exhibit 19, defendant objected and the trial judge excused the jury and held a *voir dire* hearing as to its admissibility.

SBI Agent Terry Johnson testified that the statement was made to him in the presence of Lt. Smart of the Eden Police Department at about 1:30 p.m. on 14 February 1975 in the District Courtroom in Eden, North Carolina. Agent Johnson stated that defendant indicated that he wished to make a statement but before the statement was taken, the officers called defendant's lawyer in Albany, Georgia, gave defendant the phone and left the room. About five minutes later, defendant emerged from the room and indicated that he was ready to make a statement. Johnson then fully advised defendant of his constitutional rights and defendant, without any promises or threats, signed a waiver in which he acknowledged his understanding of his constitutional rights and in which he specifically waived his right to have counsel present when he made the statement. Defendant then made a statement which he (Agent Johnson) wrote down. As the statement was written, he would occasionally read the statement back to defendant and inquire if defendant desired to make any changes or additions. Defendant made one or two minor corrections and when the statement was completed, it was handed to defendant to read. Defendant examined the statement for several minutes and then handed it to Agent Johnson with the remark that he trusted the officer. At defendant's request, SBI Agent Johnson left a copy of the statement with police officer Phillips. It was later shown that Officer Phillips did not deliver the copy of the statement to defendant.

The substance of defendant's statement was that defendant, Phyllis Brown and David Briggs planned to rob Mr. Harry Hopper on the afternoon of 8 January 1975 at about 3:00 p.m., Phyllis went to the Hopper home and made a date with Mr. Hopper for that evening. Defendant purchased two toboggans and after making some alterations so that they fitted defendant and David Briggs, the three returned to the Hopper home at about 9:00 p.m. Phyllis went into the house and defendant, with David Briggs, remained in the car for some period of time. Defendant and Briggs then put on the ski masks and

entered the Hopper dwelling. As they entered, Hopper came toward them and David hit him at least two times with a bottle. Defendant stated that he hit Mr. Hopper on his head with his fist after Mr. Hopper had bitten him. The three left the Hopper dwelling and went to a motel where they washed blood from the money taken from Mr. Hopper by David Briggs and twenty-eight dollars was divided between the two men. The men changed clothes and put their bloody clothes in a white trash can bag which was thrown from a bridge. The three of them returned to Albany, Georgia.

The State offered other evidence which corroborated the testimony of SBI Agent Johnson.

Defendant, testifying on *voir dire,* stated that on 14 February 1975, he was carried to a hospital for an insulin shot and when he returned, he was given lunch which he did not eat. At about 1:15 SBI Agent Johnson called defendant's lawyer in Albany, Georgia, and the police officers left the room so that defendant could talk with his lawyer privately. He stated that Johnson advised him of his rights one time but that no one told him that he had a right to an attorney. On cross-examination defendant stated that he was twenty-seven years old and had "about a tenth-grade education." He testified that he made the statement to the officers voluntarily but there was "a bunch of stuff in here that I did not say." He further stated that although he was told that he would be furnished a copy of the statement immediately, he did not see it until a week before the trial. Defendant said that the statement was incorrect in that he did not say that: (1) He bought the toboggans for any purpose except to protect his face and Briggs' face while they worked on his automobile, (2) that he planned to rob Mr. Hopper, and (3) that he shared in the division of any money taken from Mr. Hopper.

At the conclusion of the *voir dire* testimony, the trial judge made findings of fact consistent with the testimony of SBI Agent Johnson that defendant's statement was made freely and voluntarily. He thereupon overruled defendant's objection to the admission of this evidence.

**[9]** A trial judge's finding that an accused freely and voluntarily made an inculpatory statement will not be disturbed on appeal when the finding is supported by competent evidence even when there is conflicting evidence. *State v. Haskins,* 278

N.C. 52, 178 S.E. 2d 610; *State v. McRae,* 276 N.C. 308, 172 S.E. 2d 37; *State v. Logner,* 266 N.C. 238, 145 S.E. 2d 867, *cert. denied,* 384 U.S. 1013, 16 L.Ed. 2d 1032, 86 S.Ct. 1983. Here there was ample evidence to support the trial judge's finding that defendant freely and voluntarily made the statement. However, defendant contends that Exhibit 19 contained some things that he did not say.

**[10, 11]**    This contention does not go to the admissibility of the statement, but presents a question to be resolved by the jury. Defendant had ample opportunity by cross-examination or by direct testimony to present his contentions as to what he did or did not say in this statement. Defendant further complains that he did not receive a copy of his statement until a week before the trial. However, he fails to show that this delay hindered him in preparing or presenting his defense.

We hold that the trial judge correctly admitted State's Exhibit 19 into evidence.

**[12]**    Defendant contends that the trial judge erred by permitting the District Attorney to propound leading questions.

A leading question is a question which suggests the answer desired and often may be answered by "yes" or "no." 1 Stansbury's N. C. Evidence (Brandis Rev. 1973) § 31, p. 83. It is firmly established in the law of this State that it is within the sound discretion of the trial judge to determine whether counsel may ask leading questions, and his ruling will not be disturbed on appeal in the absence of gross abuse. *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229; *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384. We conclude that of the questions challenged, only those hereinafter discussed may be classified as leading questions.

The Assistant District Attorney inquired of Jimmy Dillon and Hazel Belcher, neighbors of Mr. Hopper, if they had "seen a red automobile around there that night or day at any time?" They both answered in the affirmative. Prior to the posing of these questions, another witness had testified without objection that she had observed a red car in front of Mr. Hopper's house on the afternoon of 8 January 1975. Phyllis Brown had also testified, without objection, that she went to the Hopper residence on the same afternoon in defendant's red Chevrolet.

The other question which may be denominated a leading question was addressed to Officer Jerry Pulliam. He was asked

if he saw any ciragettes or matches in the Hopper house. The record discloses unchallenged testimony from Officer Mike Martin that he found cigarettes and matches in the Hopper house.

The admission of incompetent testimony over objection is cured when substantially the same evidence is theretofore or thereafter admitted without objection, or elicited by the objecting party during his later examinations. *State v. Creech,* 265 N.C. 730, 145 S.E. 2d 6; *State v. Bright,* 215 N.C. 537, 2 S.E. 2d 541.

The evidence elicited by these leading questions was merely cumulative. Further, there is ample evidence of similar import in the record to render the answers given non-prejudicial.

We find no abuse of discretion on the part of the trial judge in overruling defendant's objections to these questions.

Defendant contends that the closing arguments of the District Attorney and Assistant District Attorney had a misleading and prejudicial effect upon the jury.

[13] The Assistant District Attorney made minor misstatements of applicable law in two instances. He told the jury that felony-murder "is a death resulting from acts committed in the process of committing a *crime."* (Emphasis added.) Also he argued to the jury that defendant would be guilty even if he went to the deceased's house "to assist Phyllis Brown in committing a *larceny."* (Emphasis added.) The defect in both of these explanations of the felony-murder doctrine is that they indicate that one could be convicted of felony-murder for a homicide occurring in the commission of an offense of lesser grade than felony.

The district attorney, in his argument to the jury, may not make erroneous statements of law, *State v. Cole,* 241 N.C. 576, 86 S.E. 2d 203, nor may he argue principles of law not relevant to the case. *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283. However, if such arguments are made, a new trial is required only where defendant shows on appeal that this error was material and prejudicial. *State v. Cole, supra.* In the present case, the trial judge gave a full and accurate instruction on the doctrine of felony-murder. As is customary, the judge prefaced his charge to the jury with a direction to apply only the law given to them by the court. In addition, the Assistant

District Attorney told the jury that, "His Honor will tell you what the law is . . . . " Under these circumstances, we cannot say that the misstatements of law contained in the argument of the prosecutor are so material and prejudicial as to require a new trial.

On cross-examination of Officer Ray Ganelle, defendant inquired about the results of a lie detector test which he took in the Albany, Georgia police station. The witness initially responded that defendant had "failed" and that some "sensitivity" appeared. Upon further questioning, he stated that the results were inconclusive and that no definite answers resulted from the test. In response to the prosecutor's question on redirect, the witness stated that the test showed that defendant "had knowledge of the robbery . . . . " However, the prosecutor asked that the answer be stricken and the judge instructed the jury to disregard the answer. Later, in his closing argument, the Assistant District Attorney told the jury that the lie detector test showed that the defendant "had guilty knowledge." Defendant contends that because of the answer stricken from the record, there was no evidence to support this argument.

[14] While testimony as to the results of a polygraph test is not admissible to show the guilt or innocence of an accused, *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94, incompetent evidence admitted without objection may be considered by the jury. 1 Stansbury's N. C. Evidence (Brandis Rev. 1973) § 27, p. 66.

[15] Counsel may not "go outside the record" and place before the jury facts without evidentiary support in the record. *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572, *sentence imposing death penalty vacated,* 408 U.S. 939, 33 L.Ed. 2d 761, 92 S.Ct. 2873. However, control of counsel's argument is left largely in the discretion of the trial judge. *State v. Britt, supra; State v. Williams,* 276 N.C. 703, 174 S.E. 2d 503, *sentence imposing death penalty vacated,* 403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2290. Counsel may argue to the jury all reasonable inferences to be drawn from the facts in evidence. *State v. Britt, supra; State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750. In this case there was testimony, without objection, that defendant had "failed" his lie detector test. The police officer also testified, without objection, that the results of the test "showed sensitivity that it [defendant's participation] was possible." It is reasonable to

infer from that testimony that the polygraph test results indicated that defendant had knowledge of the robbery and killing. There was, then, some evidence in the record to support the prosecutor's argument, and therefore defendant's contention is without merit.

We have reviewed the entire argument of the District Attorney and the Assistant District Attorney and find nothing which exceeds the bounds of propriety so as to require a new trial.

Defendant contends that the trial court erred in excluding evidence which he attempted to elicit on cross-examination. His primary argument is that defendant's alleged accomplice, the State's chief witness, should have been allowed to answer the following question:

> Q. Is there any condition on your testimony on how this case comes out, anything about that as to how you are sentenced?

A defendant is entitled to cross-examine an accomplice who has testified against him as to whether he has been promised immunity or leniency in return for his testimony, and the denial of this right would constitute prejudicial error. *State v. Carey,* 285 N.C. 497, 206 S.E. 2d 213; *State v. Spicer,* 285 N.C. 274, 204 S.E. 2d 641; *State v. Roberson,* 215 N.C. 784, 3 S.E. 2d 277. However, the scope and duration of cross-examination rest largely in the discretion of the trial judge, and he may limit cross-examination when it becomes merely repetitious. *State v. Bumper,* 275 N.C. 670, 170 S.E. 2d 457; *State v. Maynard,* 247 N.C. 462, 101 S.E. 2d 340.

Defendant strongly relies on the cases of *State v. Carey, supra,* and *State v. Roberson, supra,* to support his position.

In *Roberson* the defendant was awarded a new trial because the trial judge refused to allow defense counsel to show by cross-examination of the State's principal witness that a *nolle pros* had been entered in the case against him after he gave testimony against the defendant. In *Carey* the defendant attempted to show by cross-examination that the testimony of a coconspirator was influenced by the State's agreement to accept his plea of guilty to second-degree murder. The trial judge refused to allow any mention of the death penalty by the defendant in his attempts to impeach the testimony of the

coconspirator. In both *Carey* and *Roberson* the limitation on cross-examination was held to be reversible error. These cases are distinguishable from instant case in that in both *Carey* and *Roberson,* the trial judge's limitation on cross-examination *totally* precluded inquiry into the subject matter to which the respective defendant's cross-examination was directed. In the case before us, inquiry had been previously made on direct examination and on cross-examination concerning the possibility of favorable treatment to the witness in return for her testimony. On direct examination Phyllis Brown testified that she had voluntarily entered a plea of guilty to second degree murder for her participation in the crime. She said that no one representing the State had promised her anything in return for her testimony and that her testimony was given freely and willingly. On cross-examination she testified that she had been told that she would receive a prison sentence for a term of years up to and including life imprisonment. She stated that she had not been sentenced and that she did not know why her sentence had not been pronounced.

It seems clear that the trial judge was exercising his duty to control the course of the trial and to avoid repetitious questioning when he limited further cross-examination on the same subject matter. We hold that the trial judge did not abuse his discretion by excluding this repetitious cross-examination.

We do not think that the remaining questions presented by this assignment of error merit discussion. Each of them has been carefully examined without finding error prejudicial to defendant.

[17]    Defendant contends that the trial judge incorrectly instructed concerning the credibility of the testimony of defendant's alleged accomplice, Phyllis Brown.

The challenged instruction, in pertinent part, was as follows:

> . . . Now, if you find that Phyllis Brown as an accomplice, you should examine every part of her testimony with the greatest care and caution. If, after doing so, you believe her testimony in whole or in part, you should treat what you believe the same as any other believeable evidence.

This instruction required the *jury* to determine whether or not Phyllis Brown as an accomplice. Defendant argues that the trial

judge should have instructed the jury that she *was* an accomplice and that the jury must carefully scrutinize her testimony.

An accomplice testifying for the prosecution is generally regarded as an interested witness, and a defendant, upon timely request, is entitled to an instruction that the testimony of the accomplice should be carefully scrutinized. *State v. White*, 288 N.C. 44, 215 S.E. 2d 557; *State v. Bailey*, 254 N.C. 380, 119 S.E. 2d 165. Instruction to carefully scrutinize accomplice testimony is a subordinate feature of the trial and the trial judge is not required to so charge in the absence of a timely request for the instruction. *State v. Roux*, 266 N.C. 555, 146 S.E. 2d 654; *State v. Reddick*, 222 N.C. 520, 23 S.E. 2d 909. Nevertheless, once the judge undertakes to instruct the jury upon an applicable rule of law, it is his duty to correctly state that rule. *State v. Hale*, 231 N.C. 412, 57 S.E. 2d 322.

Defendant bases his argument primarily upon the case of *State v. Bailey, supra.* There the trial judge's failure to give an instruction on accomplice testimony, after a proper request, was held to be reversible error. In that case all the evidence, including his own admission, showed that codefendant Bailey participated in the crime. The Court approved the following instruction: "The court instructs you in passing upon the testimony of Bailey you should scrutinize it closely . . . . " The evidence also tended to show that two others who were present at the commission of the crime were accomplices. As to them the Court stated that the following instruction should have been given:

> . . . The court instructs you that if you merely find from the evidence that Gibson and Thomas are accomplices, or that either one of them is an accomplice . . . then you should scrutinize closely the testimony of such witness or witnesses as you find is an accomplice, or are accomplices . . . .

[16, 17] We interpret *Bailey* to say that when all of the evidence shows a witness to be an accomplice, then the trial judge should instruct that the witness's testimony should be carefully scrutinized, without requiring any finding by the jury. While this type of instruction would have been proper in the case before us, it must be borne in mind that every poorly stated instruction does not result in such prejudice as to require a new trial. In order to constitute reversible error, it must be made to appear that, in light of all the facts and circumstances,

the challenged instruction might reasonably have had a prejudicial effect on the result of the trial. *State v. Bailey*, 280 N.C. 264, 185 S.E. 2d 683, *cert. denied*, 409 U.S. 948, 34 L.Ed. 2d 218, 93 S.Ct. 293. We find no prejudicial error in the trial judge's instruction as to accomplice testimony.

[18] Defendant assigns as error the failure of the trial judge to charge on the lesser included offenses of second-degree murder and manslaughter. G.S. 14-17, in pertinent part, provides:

> A murder which shall be perpetrated by means of poison, lying in wait . . . or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery . . . shall be deemed to be murder in the first degree . . . .

This case was submitted to the jury by the trial judge on the felony-murder theory and in his final mandate to the jury he charged:

> . . . If the State has satisfied you from the evidence and beyond a reasonable doubt that on January 8, 1975, the defendant and John David Briggs entered into a conspiracy to rob Harry Hopper and that thereafter both the defendant and John David Briggs went into Harry Hopper's home and that both were present there acting in concert with each other or aiding and abetting each other in the pursuance of a common plan and purpose to rob Harry Hopper and thereby they did rob or attempt to rob Harry Hopper and while committing or attempting to commit the robbery of Harry Hopper, either the defendant or John David Briggs inflicted injuries on Harry Hopper that proximately caused his death, it would be your duty to find the defendant guilty of murder in the first degree. . . .

The law in this jurisdiction is that when all the evidence tends to show that an accused killed a deceased in the perpetration or attempted perpetration of a felony and there is no evidence of guilt of a lesser included offense, the court correctly refrains from submitting the question of accused's guilt of the lesser included offense. *State v. Woods*, 286 N.C. 612, 213 S.E. 2d 214; *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721; *State v. Doss*, 279 N.C. 413, 183 S.E. 2d 671, *sentence imposing death penalty vacated*, 408 U.S. 939, 33 L.Ed. 2d 762, 92 S.Ct. 2875.

In instant case, there was evidence tending to show that on the afternoon of 8 January 1975, Phyllis Brown's brother David Briggs inquired of her if the old man (Hopper) still had all that money. She replied that she did not know but that she would find out. Thereupon, they went to Mr. Hopper's dwelling and Phyllis went into the house. When she returned, she said she was going back to see the old man at about 10:00 that night. Thereupon they left and defendant purchased two wool-type toboggans and cut out eye holes and a nose hole so that they fitted his face and the face of David Briggs. They returned to the vicinity of Mr. Hopper's house at about 9:00 p.m. and Phyllis again entered the house. According to defendant's statement, he and David then entered the house for the purpose of getting Phyllis. Upon their entry, Mr. Hopper ran to defendant and bit his finger and defendant thereupon hit him on the head with his fist and left the dwelling. The evidence above summarized is the only possible evidence tending to support the defendant's contention that the trial judge should have submitted the lesser included offenses of second-degree murder and voluntary manslaughter. This portion of defendant's statement was entirely exculpatory and in our opinion was not sufficient to support a verdict of second-degree murder or voluntary manslaughter. We, therefore, hold that the trial judge correctly refrained from submitting these lesser included offenses to the jury.

Defendant does not argue or cite authority to support his Assignment of Error No. XIII which states that the trial judge erred in denying his motion for judgment as of nonsuit, for judgment notwithstanding the verdict and for a new trial. Thus this assignment appears to be formal and requires no discussion. We think it sufficient to say that there was plenary evidence to carry the case to the jury.

Further, in light of the holding in *Woodson v. North Carolina*, _____ U.S. _____, 49 L.Ed. 2d 944, 96 S.Ct. 2978, we do not deem it necessary to consider Assignments of Error No. XIV and XV which attack the imposition of the death penalty in North Carolina.

[19] Our careful examination of this entire record does not disclose error which would justify disturbing the verdict reached. Accordingly, we find no error in the trial which affects the verdict returned by the jury. However, on 2 July 1976, the

Supreme Court of the United States, in *Woodson v. North Carolina, supra,* invalidated the death penalty provisions of G.S. 14-17 (Cum. Sup. 1975), the statute under which the defendant was indicted, convicted and sentenced to death. In compliance with that decision, the judgment imposing a sentence of death upon Waymon Edward Harris is vacated and by authority of the provisions of 1973 Sess. Laws c. 1201, § 7 (1974 Session), a sentence of life imprisonment is substituted in this case.

This case is remanded to the Superior Court of Rockingham County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment imposing a sentence of life imprisonment for the first-degree murder of which defendant has been convicted; and (2) that in accordance with this judgment the clerk of superior court issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk furnish to defendant and his attorney a copy of the judgment and commitment as revised pursuant to this opinion.

No error in the verdict.

Death sentence vacated.