State v. Crawford

STATE OF NORTH CAROLINA v. BOBBY CRAWFORD

No. 8126SC1228

(Filed 6 July 1982)

1. **Criminal Law § 75.7— statement made by defendant before Miranda warnings—statement voluntary—properly admitted**

   Where an officer told defendant that he needed him to sign a waiver of rights form in order to question him about a break-in, and the officer further informed defendant of the presence of his fingerprints on stolen merchandise, the officer simply gave defendant the minimal information necessary for him to make an intelligent waiver. Therefore, when the defendant subsequently stated "I'm not signing anything. I don't know anything about the Firestone Store, and if any fingerprints were on the tv's, somebody else had to put them there" before the officer could read defendant his Miranda warnings, the trial court properly found defendant's statements were voluntarily made and properly admitted them.

2. **Criminal Law § 113.9— instructions—error in summarizing evidence—objection and cure**

   Although the trial court erred in stating in his summary of the evidence to the jury that the vehicle containing stolen merchandise was owned by an occupant of the same residence of defendant, the error was cured after defendant made a timely objection and the court immediately corrected its instruction and told the jury to disregard the court's recollection.

APPEAL by defendant from *Gaines, Judge.* Judgment entered 19 May 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 29 April 1982.

Defendant was convicted of felonious breaking and entering and felonious larceny. Judgment imposing concurrent prison sentences was entered.

The State's evidence tends to show the following. On the night of 28 September 1980, Officer Smith responded to a burglary alarm at a Firestone Tire and Rubber Company store on East Independence Boulevard in Charlotte. He observed a Buick vehicle parked at the rear of the store and two men approaching the car. When the men got into the car, the officer shown his spotlight on the driver's side. Defendant turned and looked directly at him for approximately five to ten seconds. The Buick then pulled away from the store. Officer Smith observed a broken window to the left of the store door.

The Buick proceeded toward downtown Charlotte at a high rate of speed. At the corner of Fifth and Seventh Streets, the vehicle went off the road into a field. The men disembarked and began running. After pursuing them unsuccessfully, Officer Smith returned to their car. It contained eight television sets which were later determined to be the property of Firestone. The police matched two prints off the television sets with the finger and palm prints of defendant. Defendant was arrested on 21 October 1980, and placed in custody.

Later that day, he was brought to the office of Officer Layton for questioning in reference to the break-in. Officer Layton testified at trial as follows:

"I told Mr. Crawford I needed to get a waiver from him and a statement in reference to the break-in at the Firestone Store on Independence Boulevard, and I also advised him that his fingerprints had been found on the televisions that were taken in the break-in which were recovered in the back . . . of his sister's car."

Defendant objected to the admission of any statements he made in response to Officer Layton's remarks. The court conducted a *voir dire*. Officer Layton testified that before he could read defendant his Miranda warnings, defendant said, "I'm not signing anything. I don't know anything about the Firestone Store, and if any fingerprints were on the TVs, somebody else had to put them on there." After hearing testimony, the court made the following finding:

"This [defendant's] utterance was not made in response to any questions propounded to him by the officer and was voluntarily made, and were [sic] not a violation, or were [sic] not made under circumstances which violated the constitutional rights of the defendant, either under the Constitution of the United States or under the Constitution of the State of North Carolina."

The court admitted defendant's statements into evidence.

Upon conclusion of the evidence and submission of the charges, a jury found defendant guilty of felonious breaking or entering and felonious larceny.

*Attorney General Edmisten, by Associate Attorney John W. Lassiter, for the State.*

*Office of the Appellate Defender, by Assistant Appellate Defender Malcolm R. Hunter, for defendant appellant.*

VAUGHN, Judge.

[1] Defendant argues that the court committed reversible error in admitting a statement which he alleges was the product of a custodial interrogation in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966). We disagree.

In *Miranda v. Arizona, supra,* the Supreme Court ruled that the Fifth Amendment requires certain warnings to be given a defendant before any evidence obtained as a result of a custodial interrogation can be admitted against him. The defendant must be advised of his right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to questioning if he so desires. The Court pointed out, however, that its decision did not bar the admission of *volunteered* statements. 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed. 2d at 726.

After *Miranda,* courts were confronted with the issue of what constitutes custodial interrogation. The phrase was defined in *Miranda* as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed. 2d at 706. Some courts concluded the Supreme Court was referring only to *express* questioning of a defendant. *See, e.g., Howell v. State,* 5 Md. App. 337, 247 A. 2d 291 (1968).

In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed. 2d 297 (1980), however, the Court declared that it did not construe the Miranda opinion so narrowly. 446 U.S. at 299, 100 S.Ct. at 1688, 64 L.Ed. 2d at 306. It emphasized that the concern in *Miranda* was protection of the privilege against compulsory self-incrimination, a privilege which could be violated by techniques of persuasion other than express questioning. The Supreme Court declared the following:

"We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. . . . But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response."

446 U.S. at 300-02, 100 S.Ct. at 1689-90, 64 L.Ed. 2d at 307-08.

In *Innis*, defendant's incriminating statements occurred after he had been arrested for murder and while he was en route to the central police station. Two officers in the front seat were discussing their concern that handicapped children in the area might find the murder weapon and hurt themselves. Defendant interrupted the conversation and said he could show them where the gun was located.

Applying its definition to the facts at hand, the Supreme Court concluded that defendant had not been interrogated within the meaning of Miranda. The Court pointed out that the officers had not directed their statements to defendant. There had also been no showing that the officers were aware defendant was peculiarly susceptible to an appeal to his conscience concerning the safety of children. In short, it could not be said that the officers should have known their words were reasonably likely to elicit an incriminating response.

Applying the Court's definition to the facts in the present case, we conclude the trial court properly found that defendant's statements were voluntarily made. Officer Layton told defendant that he needed him to sign a waiver of rights form in order to question him about the break-in. When the officer further informed defendant of the presence of his fingerprints on the stolen

merchandise, the officer simply gave defendant the minimal information necessary for him to make an intelligent waiver. There was no reason for Officer Layton to have known that his preliminary remarks were likely to elicit an incriminating response.

We distinguish the situation from that of an officer confronting defendant with incriminating evidence after defendant has invoked his Miranda rights. The present defendant replied before Officer Layton ever had the opportunity to read him his Miranda warnings. Where the evidence supports the trial court's findings and conclusions that the statements were freely and voluntarily made, the ruling will not be disturbed on appeal. *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976).

Moreover, even if we could conclude the court erred in admitting defendant's statement, it would be harmless beyond a reasonable doubt. In the present cause, an expert in fingerprint identification testified that prints lifted from the stolen television sets were identical to defendant's. The officer at the scene of the crime positively identified defendant as the perpetrator. The statement did not incriminate defendant. In fact, it was consistent with defendant's theory raised on cross-examination that any prints found on the television sets resulted from legitimate customer contact. Defendant's assignment of error is overruled.

[2] Defendant's Assignment of Error No. 3 concerns the jury instructions. In summarizing the evidence, the court stated that the Buick vehicle containing the stolen sets had a tag number "registered to and owned by an occupant of the same residence that the defendant, Bobby Crawford, lived in, and that the owner of the vehicle was related to Bobby Crawford." Defendant argues that the State offered no evidence to prove ownership or residency and that the judge's remarks constituted an improper expression of opinion.

Any error in a court's summation of the evidence should be called to the attention of the court before the jury begins its deliberations. *State v. Hammonds*, 301 N.C. 713, 272 S.E. 2d 856 (1981). The present defendant did make timely objection. The court, thereafter, immediately corrected its instruction concerning defendant's residence and told the jury to disregard the court's recollection. We must assume the jurors were capable of

following the court's instruction. Since the State presented evidence that the Buick was registered to defendant's sister, the jury was properly allowed to consider ownership. Defendant's assignment of error is overruled.

No error.

Judges MARTIN (Robert M.) and ARNOLD concur.