IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-105

No. 528A20

Filed 24 September 2021

IN THE MATTER OF: D.J.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 18 September 2020 by Judge Beverly Scarlett in District Court, Orange County. This matter was calendared for argument in the Supreme Court on 19 August 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Stephenson & Fleming, LLP, by Deana K. Fleming, for petitioner-appellee Orange County Department of Social Services.*

*Michelle FormyDuval Lynch for appellee Guardian ad Litem.*

*Wendy C. Sotolongo, Parent Defender, by J. Lee Gilliam, Assistant Parent Defender, for respondent-appellant mother.*

BARRINGER, Justice.

¶ 1    Respondent appeals the trial court's order which terminated her parental rights to her minor child, D.J. (Daniel).[1] The trial court found that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (2) and that termination was in Daniel's best interests. Respondent has not challenged on appeal the trial court's conclusion that the grounds for termination pursuant to

---

[1] A pseudonym is used to protect the identity of the minor child and for ease of reading.

N.C.G.S. § 7B-1111(a)(1) and (2) existed or that termination was in Daniel's best interests. Instead, respondent argues that the trial court erred by denying her counsel's motion to continue the termination hearing and that the trial court failed to comply with the requirements of the Indian Child Welfare Act (ICWA). Since we conclude that respondent has failed to show prejudice from the trial court's denial of the motion to continue and, further, since we conclude that the trial court has now sufficiently complied with the ICWA as it pertains to Daniel, we reject respondent's arguments and affirm the trial court's termination-of-parental-rights order.

## I.    Background

Petitioner Orange County Department of Social Services (DSS or OCDSS) first became involved with respondent and Daniel on 30 January 2019 when it received a Child Protective Services (CPS) report that respondent appeared to be impaired while visiting a children's museum with Daniel. A DSS social worker responded to the scene where respondent acted disorganized and agitated, swayed back and forth while standing, and had difficulty maintaining a linear conversation. When respondent could not identify an alternative caretaker for Daniel, the social worker attempted to locate a temporary safety provider. Respondent became agitated and uncooperative and fled from DSS and law enforcement with Daniel. DSS and law enforcement attempted unsuccessfully to locate respondent and Daniel in the vicinity of the children's museum.

The next day, on 31 January 2019, DSS filed a petition alleging that Daniel was a neglected and dependent juvenile. In addition to recounting the incident at the children's museum, the petition alleged that respondent had a prior CPS report involving Daniel in Randolph County and another in Forsyth County. DSS was also granted nonsecure custody of Daniel. Respondent and Daniel were eventually located at a nearby apartment complex.

On 7 March 2019, DSS filed an amended petition, adding allegations regarding prior CPS reports involving respondent and Daniel in Guilford County and Durham County and respondent's history of substance abuse and mental health issues. After a hearing on the amended petition on 21 March 2019, the trial court entered an order adjudicating Daniel as a neglected and dependent juvenile on 30 April 2019. The trial court's order also incorporated by reference the court report prepared by DSS in which it stated that respondent "has reported American Indian heritage and letters have been mailed to the identified tribes."

DSS filed a motion in the cause to terminate respondent's parental rights on 26 February 2020. In the motion, DSS alleged two grounds for termination: neglect and willful failure to make reasonable progress in correcting the conditions that led to Daniel's removal. *See* N.C.G.S. § 7B-1111(a)(1)–(2) (2019).

The termination motion was called for a hearing on 6 August 2020. Immediately before the termination hearing, the trial court heard a motion to

continue that had been filed by respondent's counsel to secure the testimony of a witness who worked at Lincoln Community Health Center. Respondent's counsel recounted his attempts to secure the witness's testimony and indicated that "[his] understanding in talking with the Lincoln Community [Health] Center was that they would not let [the witness] come [testify]." The trial court denied the motion to continue but ruled that the witness could testify by phone or Webex and afforded respondent's counsel the opportunity to contact the witness during an impending thirty-minute recess to determine if she would testify via telephone or Webex. Respondent's counsel then made an offer of proof as follows:

> I'd just like to make an offer of proof on this that [the witness] has had contact and ha[s] been involved with [r]espondent[-m]other since, I think, about May of last year, that [r]espondent[-m]other gets several services at Lincoln Community [Health] Center including I think there's a substance abuse treatment. There's a psychiatrist and maybe another—a therapist involved also.
>
> [The witness] is sort of a—what she calls a bridge counselor, that she's able to connect these services, so she's aware of these services. Also she sees [respondent-mother], my understanding is, once or twice a month. I don't know exactly how it was going through COVID. I think it might have been [by] telephone[ ], but [respondent-mother] called in regularly to her and also attended the, you know, Lincoln Community [Health] Center.
>
> So I just think in terms of the information she could offer in court, it would be extremely valuable.

Counsel for DSS in response clarified that there is no dispute that respondent gets

some services at Lincoln Community Health Center and that DSS had contact with Lincoln Community Health Center and received some information from them. Counsel for DSS then had a case social worker inform the trial court of her contact with the witness and her attempts to obtain records from the witness which were ultimately unsuccessful. Finally, DSS's counsel raised that Lincoln Community Health Center was in Durham but that respondent indicated she was traveling from her home in Mount Airy. The trial court subsequently took a scheduled recess.

¶ 7 After the recess, respondent's counsel informed the trial court that he was unable to get in contact with the witness despite calling her and leaving her voicemails. The termination hearing then proceeded. Approximately twenty-five minutes later, respondent's counsel received a response from the witness indicating that her employer would not allow her to testify. After DSS concluded its presentation of evidence for the adjudicatory phase of the termination hearing, respondent's counsel renewed the motion to continue. The trial court again denied the motion.

¶ 8 After the termination hearing, the trial court entered an order terminating respondent's parental rights in Daniel. The trial court found that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (2) and that termination was in Daniel's best interests. The order was amended on 18 September 2020, with the trial court reaching the same conclusions in the amended order. Respondent appealed.

## II.    Motion to Continue

Respondent contends that the trial court erred by denying her motion to continue. Respondent submits that she was prejudiced by her inability to examine the witness who worked at the Lincoln Community Health Center during the termination hearing.

"Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *In re A.L.S.*, 374 N.C. 515, 516–17 (2020) (quoting *State v. Walls*, 342 N.C. 1, 24 (1995)). "Abuse of discretion results where the [trial] court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 517 (quoting *State v. Hennis*, 323 N.C. 279, 285 (1988)).

> In reviewing for an abuse of discretion, we are guided by the Juvenile Code, which provides that continuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice. Furthermore, continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice.

*In re J.E.,* 377 N.C. 285, 2021-NCSC-47, ¶ 15 (cleaned up).

"If, however, the motion [to continue] is based on a right guaranteed by the Federal and State Constitutions, the motion presents a question of law[,] and the order of the [trial] court is reviewable." *In re A.L.S.*, 374 N.C. at 517 (quoting *State v.*

*Baldwin*, 276 N.C. 690, 698 (1970)). However, when "[the respondent] did not assert in the trial court that a continuance was necessary to protect a constitutional right," this Court does not review the trial court's denial of a motion to continue on constitutional grounds. *In re A.L.S.*, 374 N.C. at 517; *see also In re J.E.*, ¶ 14. Instead, the respondent is held to "ha[ve] waived any argument that the denial of the motion to continue violated his [or her] constitutional rights." *In re J.E.*, ¶ 14 (citing *In re S.M.*, 375 N.C. 673, 679 (2020)); *see also In re A.L.S.*, 374 N.C. at 517.

¶ 12        "Moreover, '[r]egardless of whether the motion raises a constitutional issue or not, a denial of a motion to continue is only grounds for a new trial when [the respondent] shows both that the denial was erroneous, and that he [or she] suffered prejudice as a result of the error.' " *In re A.L.S.*, 374 N.C. at 517 (first alteration in original) (quoting *Walls*, 342 N.C. at 24–25); *see also State v. Phillip*, 261 N.C. 263, 266–67 (1964) ("Regardless of whether the defendant bases his appeal upon an error of law or an abuse of discretion, it is elementary that to entitle him to a new trial he must show not only error but prejudicial error.").

¶ 13        In this matter, respondent's counsel did not raise a constitutional argument before the trial court. Thus, while respondent appears to suggest that the trial court's denial of the motion to continue was constitutional error, respondent has waived any argument to this effect. Respondent has also failed to show prejudice. While respondent made an offer of proof concerning the witness's testimony, the offer of

proof is vague. *See In re A.L.S.*, 374 N.C. at 518 (upholding the denial of a motion to continue when "respondent-mother's counsel offered only a vague description of the [witness]'s expected testimony"). The offer of proof provided that the witness has had contact and been involved with respondent since May of the prior year, saw respondent once or twice a month, and connected respondent to services at Lincoln Community Health Center. However, it does not say what the witness's testimony would be. There was also no dispute that respondent received some services at Lincoln Health Community Center.

¶ 14        Since continuances are not favored, motions to continue "ought not to be granted unless the reasons therefor are fully established." *State v. Gibson*, 229 N.C. 497, 501 (1948) (citing *Commonwealth v. Millen*, 289 Mass. 441, 463 (1935)). Based on the record before us, respondent's offer of proof fails to demonstrate the significance of the witness's potential testimony and any prejudice arising from the trial court's denial of her motion to continue. *See In re H.A.J.*, 377 N.C. 43, 2021-NCSC-26, ¶ 13; *Phillip*, 261 N.C. at 267 ("[A] mere intangible hope that something helpful to a litigant may possibly turn up affords no sufficient basis for delaying a trial to a later term." (quoting *Gibson*, 229 N.C. at 502)). Therefore, we reject respondent's assignment of error.

## III.    Indian Child Welfare Act

¶ 15        Respondent additionally argues that the trial court failed to comply with its

obligations under the ICWA when it had reason to know Daniel had Indian heritage. DSS and the guardian ad litem concede that the record fails to establish that the trial court complied with the ICWA notice requirements prior to the termination hearing, but DSS has supplemented the record on appeal with post-termination-of-parental-rights-hearing orders, exhibits, and related materials that DSS contends are salient to the ICWA issues on appeal.

¶ 16    We have previously addressed the sufficiency of post-termination-of-parental-rights notices and hearings to address compliance with the ICWA in *In re E.J.B.*, 375 N.C. 95 (2020). In that matter, two tribes responded to the notices and indicated that the juveniles "were not 'Indian children' as defined in 25 U.S.C. § 1903(4)," but one tribe—the United Keetoowah Band of Cherokee Indians tribe—did not respond to the notice. *Id.* at 106. This Court "conclude[d] that the post termination notice sent to the Keetoowah Band of Cherokee Indians tribe did not cure the trial court's failure to comply with the [ICWA] prior to terminating respondent-father's parental rights," *id.*, because the trial court had failed to ensure that DSS used due diligence when contacting the tribes, *id.* (citing 25 C.F.R. § 23.107(b)(1) (2019)). "If a tribe fails to respond, the trial court must seek assistance from the Bureau of Indian Affairs prior to making its own independent determination." *Id.* (citing 25 C.F.R. § 23.105(c) (2019)).

¶ 17    The ICWA provides as follows:

> If you do not have accurate contact information for a Tribe, or the Tribe contacted fails to respond to written inquiries, you should seek assistance in contacting the Indian Tribe from the [Bureau of Indian Affairs] local or regional office or the [Bureau of Indian Affairs]'s Central Office in Washington, DC (see *www.bia.gov*).

25 C.F.R. § 23.105(c) (2020). In *In re E.J.B.*, we thus reversed and remanded to the trial court to issue an order requiring that proper notice be sent to the Keetoowah Band of Cherokee Indians tribe despite the trial court's post-termination-hearing conclusion that the ICWA did not apply. *In re E.J.B.*, 375 N.C. at 106. Further, we instructed the trial court as follows:

> If the Keetoowah Band of Cherokee Indians tribe indicates that the children are not Indian children pursuant to the [ICWA], the trial court shall reaffirm the order terminating respondent-father's parental rights. In the event that the Keetoowah Band of Cherokee tribe indicates that the children are Indian children pursuant to the [ICWA], the trial court shall proceed in accordance with the relevant provisions of the [ICWA].

*Id.*

In this matter, the trial court also exercised jurisdiction to conduct post-termination-of-parental-rights review and hearings. However, in contrast to *In re E.J.B.*, the trial court ensured compliance with 25 C.F.R. § 23.105(c) and DSS's due diligence before concluding that the ICWA did not apply. The trial court, after hearing the evidence, found and concluded as follows:

> 14. Respondent[-]mother previously reported to OCDSS potential Native American Heritage, specifically the

Cherokee and Iroquois (Haudenosaunee) Tribes.

15. In 2019, OCDSS initially sent ICWA notices to the Easter[n] Band of Cherokee Indians and notification to state-recognized tribes, Haliwa Saponi Indian Tribe and Sappony Indian Tribe. Non-membership letters were received from these tribes.

16. After the case was transferred from the foster care unit to the adoption unit of OCDSS, the agency became aware that notices previously provided to the above-mentioned tribes did not comport with ICWA requirements for notification of the Native American Heritage identified by [r]espondent[-]mother.

17. In January 2021, OCDSS mailed additional Tribal Notification Letters, including Consent to Explore American Indian Heritage, and copies of the Juvenile Petition, by Certified Mail Return Receipt Requested to the nine tribes identified as "Iroquis" . . . .

. . . .

18. In January 2021, OCDSS mailed additional Tribal Notification Letters, including Consent to Explore American Indian Heritage, and copies of the Juvenile Petition, by Certified Mail Return Receipt Requested to the three tribes identified as "Cherokee" . . . .

. . . .

19. In response to the Tribal Notification Letters and accompanying documents set forth above, letters of the juvenile's non-eligibility status have been received from eight of the nine tribes identified as "Iroquis" . . . .

. . . .

20. Despite confirmation of receipt of the Tribal Notification Letters and accompanying documents, the

Onondaga Nation (NY) has not responded to the inquiry. On March 11, 2021, the assigned social worker called the Onondaga Nation (NY) to follow up on the notification sent and left a voice mail message.

21. On March 11, 2021, [OCDSS] sent a letter to the Indian Child Welfare Services, Bureau of Indian Affairs Regional Office, Attention Gloria York, 545 Marriot Drive, Suite 700, Nashville, TN, 37214 requesting assistance to determine tribal membership eligibility of the juvenile regarding the identified tribes who have not responded within the fifteen-day time frame.

. . . .

23. On April 7, 2021, the United States Department of the Interior Bureau of Indian Affairs issued a Response to ICWA Child Custody Notification/Request for Indian Ancestry to the assigned OCDSS social worker . . . . A copy of the letter was admitted into evidence and is hereby incorporated by reference.

24. The Bureau of Indian Affairs specified in relevant part as follows:

> a. The BIA acknowledges that you have notified the family's identified Tribe(s) Tuscarora, Tonawanda, Mohawk, Seneca, Oneida, EBCI, Cayugo, Onondaga, and Keetoowah based on your inquiry with the family according to 25 U.S.C. § 1912.

> b. You have identified that Onondaga and Keetoowah have not responded. At this point, you have done due diligence and completed your ICWA responsibilities.

25. On May 20, 2021, the assigned social worker received an email from the Cherokee Nation (OK) confirming the juvenile's non-eligibility status. A copy of which was admitted into evidence, and hereby incorporated by

reference.

26. On April 26, 2021, the United Keeto[o]wah Band of Cherokee (OK) issued a letter of the juvenile's non-eligibility status. A copy of which was admitted into evidence, and hereby incorporated by reference.

27. In response to the Tribal Notification Letters and accompanying documents set forth above, letters or written correspondence of the juvenile's non-eligibility status have been received from the three tribes identified as "Cherokee" . . . .

. . . .

28. While OCDSS has not received a letter regarding the juvenile's eligibility status with the Onondaga, the Bureau of Indian Affairs determined that OCDSS conducted due diligence and completed responsibilities under the Indian Child Welfare Act.

29. In accordance with 25 U.S.C. § 1912, OCDSS complied with notification requirements to determine whether the juvenile was a member or eligible for membership in . . . a federally recognized Indian Tribe.

30. The [c]ourt has sufficient, credible evidence to determine that the juvenile is not an Indian Child as defined by the Indian Child Welfare Act.

. . . .

HAVING MADE THE PRECEDING FINDINGS, THE COURT CONCLUDES AS FOLLOWS:

1. This [c]ourt has jurisdiction, both personal and subject matter, and all parties have been properly served and are properly before the [c]ourt.

2. OCDSS has complied with ICWA notification

requirements as set forth herein.

3. The juvenile is not an Indian Child as defined by 25 U.S.C. § 1912.

4. The Indian Child Welfare Act (ICWA) does not apply to the juvenile and subsequent custody or adoption proceedings.

¶ 19 As reflected in the foregoing findings of fact and conclusions of law by the trial court, the trial court ensured that DSS used due diligence in contacting and working with the tribes. Response letters were received from all tribes but one, and all response letters received indicated that Daniel was not eligible for membership in the respective tribe. For the one tribe that did not provide a response letter, DSS complied with 25 C.F.R. § 23.105(c). DSS contacted the Bureau of Indian Affairs, and the Bureau of Indian Affairs determined that DSS "ha[d] done [its] due diligence and ha[d] completed [its] ICWA responsibilities." The trial court also concluded that "[t]he juvenile is not an Indian Child as defined by 25 U.S.C. § 1912." Given the foregoing, we hold that the trial court has now sufficiently complied with the requirements of the ICWA as it pertains to Daniel and cured its prior noncompliance.

¶ 20 To the extent respondent argues that the trial court's prior noncompliance with the ICWA deprived the trial court of jurisdiction to enter orders addressing the custody of Daniel, this argument fails. Respondent has not contended, and the record does not support that an Indian tribe has exclusive jurisdiction pursuant to 25 U.S.C. § 1911(a). Exclusive jurisdiction is only vested in an Indian tribe for a "child custody

proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe" or "[w]here an Indian child is a ward of a tribal court." 25 U.S.C § 1911(a). Further, after ensuring DSS's due diligence in its compliance with the notice requirements of 25 U.S.C. § 1912(a), albeit post-termination, the trial court concluded that Daniel is *not an Indian child*. Thus, we need not address whether and what remedy exists for noncompliance with 25 U.S.C. § 1912(a) in a child-custody proceeding involving an Indian child as defined by 25 U.S.C. § 1912. In this matter, any error by the trial court on account of its belated compliance with the ICWA is not prejudicial. Therefore, we affirm the termination order.

## IV.    Conclusion

Based on the foregoing analysis, we reject respondent's arguments on appeal concerning the termination order. Respondent has failed to show prejudice as to the trial court's denial of her motion to continue, and the trial court has now complied with the ICWA. Accordingly, we affirm the trial court's termination order.

AFFIRMED.